GENERAL ELECTRIC COMPANY, Plaintiff, v. INTERSTATE ELECTRIC COMPANY, Defendant; DONALD W. JOHNSON, Receiver, Respondent; MISSOURI VALLEY ELECTRIC COMPANY, a Corporation, Intervener, Appellant.

Kansas City Court of Appeals, January 27, 1919.

1. **RECEIVERS: Intervening Petition: Confirmation of Sale of Assets.** Where a successful bidder, at a receiver's sale of assets, discovers that one of the accounts listed was not in reality sold, as it had in fact been paid which was unknown to the receiver until after the bidding, the latter immediately communicating such fact to the bidder and he, thereafter, permitted the confirmation of the sale, by the court, accepted the remainder of the property and paid the amount of his bid therefor, the receiver cannot be required to pay the purchaser the proceeds of said account.

2. ———: ———: ———. If one offering to buy property at a receiver's sale, afterwards discovers that some portion of what he thought was sold was not in fact sold and that he is not going to get it, allows the contract to be thereafter completed and accepts the reduced quantity, he will be deemed to have agreed to the sale as it was actually and in fact made.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird*, Judge.

AFFIRMED.

*John F. Cell* for appellant.

*Williams, Guffin & Field* and *C. S. McLane* for respondent.

TRIMBLE, J.—Donald W. Johnson, Receiver of defendant, Interstate Electric Company, in the above entitled cause, was ordered to sell at public auction to the highest bidder for cash, on October 2, 1917, "the merchandise, fixtures, good will, book accounts, bills receivable, choses in action, goods and property of every kind, character and description . . . belonging to and being the property of the Interstate Electric Company." The order of sale specified "that the highest bid be submitted to the court for its approval or rejection, the court hereby reserving the right to reject any and all bids."

A list of the book accounts was prepared and in it appeared an account in the sum of $937.10 due from the Munson Electric Company of Eldorado, Kansas. Prior to the sale, but at just what time is not shown, the president of the Intervener herein, Missouri Valley Electric Company, in examining the property and assets to be sold, saw the prepared list of accounts, noted the account against the Munson Company and made some inquiry as to the latter's solvency.

At the sale, the Intervener herein bid the sum of $13,000 and the property directed to be sold was knocked down to it by the auctioneer for the amount of said bid. The bidder then went to the bank to obtain a certified check with which to pay its bid.

Up to the time the bidder left the scene of the sale to get its certified check, both the Receiver and the bidder thought the Munson account was unpaid; but it seems that on September 29, 1917, several days before the sale, the Munson Company had paid its account to an agent of the Receiver by delivering its check to him. This agent turned the check over to another agent of the Receiver for delivery to the latter. In some way the payment of the account was not reported to the Receiver until after the bidder for the property sold had left to get its check certified by its bank; but while the bidder was gone for that purpose, the payment of the Munson account was reported to the Receiver and he

was handed the Munson Company's check for the amount of its account.

The bidder returned shortly thereafter and handed the Receiver its certified check for $13,000 and then the fact that the Munson account had been paid before the sale came out and the bidder, Intervener herein, claimed it was entitled to have the Munson check in lieu of the Munson account. It had been expressly stated at the sale that no money or cash assets of the bankrupt company were included in the sale, and the Receiver was unwilling to assume the responsibility of turning over the Munson check to the purchaser at the sale. He, therefore, told the bidder "the court would have to pass on it" and to this the bidder finally agreed.

The sale was reported to the court on the 3rd day of October, 1917, and the sale was confirmed and approved as made and the Receiver thereupon executed and delivered to the bidder a bill of sale.

No steps were taken in court by the bidder to have the court to release it from its bid and return the purchase price; nor was the court asked to permit a proportionate or any other abatement of the purchase price. Some "informal talk" was had by the bidder before the court as to the bidder's claim to the money paid on the Munson account, but no step was taken to disavow the purchase on the ground of mistake or on any other ground, nor was any opposition made to the confirmance of the sale.

On the 6th of October, 1917, the bidder, after having paid for and accepted the property with full knowledge of the facts concerning the Munson account and that the said account was not in fact sold, filed an intervening petition against the Receiver setting up the facts and charging the Receiver with wrongfully withholding the Munson check and converting the proceeds thereof, and praying the court to make an order directing the Receiver to pay over the said proceeds so wrongfully withheld by him with interest from the date of sale at six per cent.

On the 19th of October, 1917, the suit on the intervening petition was tried and the court rendered judgment in favor of the Receiver; whereupon, intervener appealed.

The account was paid September 29, 1917, and the Receiver was the owner of the account at that time. Neither he nor intervener knew it at the time the sale was bid off by the latter. At that time the Munson account appeared on the books as unpaid but it in fact was paid, and both Receiver and bidder were acting under a mistake in that regard. But the mistake, or the diminution in the quantity of property actually sold, was discovered and became fully known to the bidder before the sale became final. Not only by the terms of the order of sale, but under the law, the steps taken at the auction did not become a *completed sale* until confirmation by the court. Until then, there was no completed and binding contract, for up to that time the bid was a mere offer to purchase. [16 R. C. L.] A purchaser at a judicial sale will be relieved from the *completion* of his purchase, and his deposit restored, when it appears that the contract was one that he never intended to make, and was entered into without negligence on his part. [16. R. C. L., 90, 91.] The mistake in this case was mutual; and in the case of a diminution in quantity through mistake the purchaser, free of negligence, will be allowed a deduction, or, if the deficiency is of such a nature that had it been known it would have prevented the purchase, the purchaser may be relieved altogether. [16 R. C. L., 91.] If, therefore, the bidder, after discovering that one of the accounts was not in reality sold, was not satisfied with the diminution in quantity of the property sold, it was incumbent on it to renounce its bid and ask that it be relieved from the proposed contract and its bid returned to it, or else that a *proportionate* abatement of the purchase price be made. Instead of doing that, Intervener seems to have been willing for the sale, as *actually* made, to be confirmed. In other words, notwithstanding its knowledge of the diminution in the

quantity of the property it was to get, it permits the contract to become complete by confirmation and accepts the remainder of the property for the price paid.

The sale was a judicial sale, and the Receiver was a judicial officer a "mere minister of the law." No warranty of title is implied in judicial sales. [35 Cyc. 396.] It is not claimed that the Receiver warranted the title or condition of the property, but his official capacity was known; and an officer of the court "has no authority, to do anything that shall expressly or impliedly bind any one by warranty." [The Monte Allegre, 9 Wheaton 614, 645.] It is a well-established rule that where a party knowingly accepts goods of an inferior quality or condition delivered in performance of a contract, he cannot afterwards object to the quality or condition. [Stevens v. Mackay, 40 Mo. 224; Black River Lumber Co. v. Warner, 93 Mo. 374, 386; Crawford v. Elliott, 78 Mo. 497; Graff v. Foster, 67 Mo. 512, 520.] It is not seen how there can be any difference in principle between a deficiency in quality and a deficiency in quantity. The purchaser is not bound to accept the goods in either event, but may waive one as well as the other.

There was a large amount of property sold in one bulk. If the purchaser was unwilling to take it when he discovered that a certain item was not sold, he could have asked that the sale be not consummated, in which case the Receiver would have the opportunity of selling the property that was left for the same or a better price, and in this the creditors of the bankrupt were also interested. It is well known that when a large amount of assets are sold in one bulk, they are usually purchased at a bargain. And if the one offering to buy afterwards discovers that some portion of what he thought was sold was not in fact sold and that he is not going to get it, and yet nevertheless allows the contract to be thereafter completed and accepts the reduced quantity, he should be deemed to have agreed to the sale as it was actually and in fact made. Or, if the purchaser was not desirous of having the entire

transaction set aside, but wanted a diminution of his offer on account of the diminution in quantity, he should ask the court for a *proportionate* abatement of the purchase price. [34 Cyc. 329.] In this case the purchaser did neither; but on the charge that the Receiver was wrongfully withholding and had converted the proceeds paid by the Munson Company in payment of its account, it asks judgment against the Receiver for a sum of money representing the shortage after that shortage was waived. The judgment of confirmation of the sale as actually made was suffered to be entered, was acquiesced in, and has become final and binding since it was never appealed from. The Receiver acts in a representative and ministerial capacity and the rights of others are involved. He incurred no liability against himself, nor could he as a mere officer of the court assume to himself the right or power to hand proceeds over to the bidder upon his claim therefor. We, therefore, do not see how he can be made to respond in a proceeding brought against him.

It is said the confirmation of the sale was not pleaded by the Receiver herein. It did not have to be since the intervening petition alleged it.

The judgment is affirmed. All concur.