## HALL v. McGEHEE.

Circuit Court of Appeals, Fifth Circuit.

February 5, 1930.

No. 5761.

Giles F. Lewis and M. W. Wells, both of Orlando, Fla., for appellant.

George Palmer Garrett, of Orlando, Fla., for appellee.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from an order of District Court of the United States for the Southern District of Florida, reversing an order of the referee in bankruptcy, which required a purchaser at a bankrupt sale to pay over to the trustee in bankruptcy a claimed balance of purchase money due from him to the trustee.

The sale, a private one, consisted of merchandise, fixtures, and an automobile. Prior to the sale, an inventory had been taken in the bankruptcy proceeding. The merchandise was inventoried at $23,946.49, and the fixtures and automobile at $850. The trustee on December 23, 1927, addressed a letter to creditors and to prospective bidders, notifying them of the sale, which was to be effected through sealed bids, accompanied by a certified check for 10 per cent. of the bid. The trustee's letter stated that the inventory totaled the merchandise at $23,096.49, and that the merchandise had been appraised at $22,096.49. The difference was due to goods having been sold from the stock after the inventory had been taken. The appellee submitted a bid, agreeing to pay 60 cents on the dollar for the merchandise, office and warehouse furniture and fixtures, and the automobile equipment, on the basis of the appraised value, covering items as shown on the inventory, for cash, 10 per cent. with the bid, and the balance upon confirmation and delivery of a bill of sale.

At the time appellee submitted his bid, and at the time of the confirmation of the sale, the appellee had been informed and knew that some of the inventoried goods had been sold, and for this reason it was agreed between the trustee and the appellee that there should be a joint check to show the amount of the inventoried goods, which the appellee actually received. There was a difference between the trustee and the appellee in the check, but the referee accepted the purchaser's count, and held that the shortage was $2,677.43. The sale was confirmed by the referee; the property turned over to the appellee, as purchaser. The appellee paid a further amount of $8,474, and tendered a check for $1,239.68 to the trustee to close the transaction, which the trustee did not accept. The trustee claimed that the unpaid balance was $2,910.84, and the referee entered an order upon the rule to show cause, requiring the

purchaser to pay that amount, with interest and costs. This is the order which was reversed by the District Court, from whose judgment this appeal is taken.

The difference between the trustee and the appellee is not due to any difference in the amount of stock undelivered, but to the methods used by them, respectively, in applying the percentage to the bid, in view of the shortage. The appellee first computed the amount of his bid of 60 cents on the dollar upon the appraised value, making the net amount of his bid $13,767.60, and from this amount deducted the shortage of $2,677.43, leaving the amount claimed to be due by him at $11,090.47, of which he had paid the trustee $9,850.79, leaving, according to his contention, $1,239.68, for which he sent the trustee his check. The trustee contended, and the referee held, that the shortage should have been first deducted from the inventory value, and the 60 per cent. applied after such deduction to the remainder of $21,269.06, which left a balance due the trustee, after deducting all payments, of $2,910.84, which, with interest and costs, the referee's order required the purchaser to pay. The referee used the inventory value, which was $1,000 more than the value fixed by the appraisers; the appraisal having been reduced by that amount because of a supposed sale of goods, after inventory taken in that amount. This $1,000 was included in the $2,677.43, which the referee deducted from the amount of the inventory.

■ The one question involved is whether or not appellee is entitled to deduct the shortage on the basis of 100 cents on the dollar from the net amount of his bid, or whether the shortage should have been deducted first from the inventory value and the purchase price then computed by taking 60 per cent. of the residue.

The appellee in his bid agreed to pay 60 cents on the dollar for the stock of merchandise on the basis of its appraised (inventoried) value. By figuring according to the contention of the appellee, he would pay less than on the basis of 60 cents on the dollar of the appraised value of the stock, since $11,090.47, the amount the appellee contends for, is approximately 50 cents on the dollar on $21,269.06, which was the appraised value of the actual merchandise received by the appellee. There must be a reason, outside of the terms of the bid, to justify such a result. The District Judge thought that fairness and equity justified it, though strict law did not.

It is claimed by the appellee that the goods that were undelivered were above the average in quality of the entire stock. However, the sale was a judicial sale, which carried no warranty of quality, and the appellee knew that some of the stock inventoried had been sold when he submitted his bid, and with this knowledge bought the stock, asked that the sale be confirmed by the referee, and paid part of the purchase money. He is not entitled to any undue consideration in fairness and equity under these circumstances.

■ Appellee also contends that he should be compensated for the loss he suffered by not receiving all the goods that were inventoried, and thereby losing his prospective profit on them, by now being permitted to offset this damage against the unpaid purchase money. The authority of the referee, upon the rule to show cause, was limited to the collection of the balance of unpaid purchase money. He had no authority to determine in a summary proceeding for that purpose the liability of the trustee for damages for failure to deliver all the merchandise purchased or the amount of such damages. If the appellee was dissatisfied with his purchase because of the shortage, he could have asked the court not to confirm the sale, and to rescind the transaction. On the contrary, he sought its confirmation and paid part of the purchase money, with knowledge of the shortage, after it had been confirmed. Under these circumstances, the utmost he could have asked in equity would have been a proportionate abatement of the purchase money, and this the referee gave him, based on his own estimate of the amount of goods that were short. General Electric Company v. Interstate Electric Company, 201 Mo. App. 22, 209 S. W. 562; Cypress Lumber Company v. Tillar & Wilson, 73 Ark. 354, 84 S. W. 490; 34 Cyc. 329.

■ Appellee knew he was buying at a judicial sale, at which the rule of caveat emptor applied. In re The Monte Allegre, 9 Wheat. 616, 6 L. Ed. 174; Carney v. Averill, 110 Me. 172, 85 A. 494; John Schaap Drug Company v. Rone (C. C. A.) 19 F.(2d) 517. He also had actual knowledge that a part of the merchandise had been sold after it had been inventoried, and agreed with the trustee upon a joint check for that reason. Even if the trustee failed to deliver the amount inventoried, the appellee, having knowingly bid for and received the unsold part of the merchandise, and having asked a confirmation of the sale on this partial basis, cannot assert that the contract of sale was broken thereby. The transaction would constitute a sale of only what was left of the stock. The appellee himself testified, "We bought what was

down there," and the trustee was due to deliver no more.

The conclusion reached requires the reversal of the order of the District Court and the remand of the case for further proceedings in conformity with the order of the referee; and it is so ordered.

Reversed and remanded.