# CHARLESTON.

YOUNG & McWHORTER *v.* J. F. SMITH *et al.*

Submitted April 12, 1921.   Decided April 19, 1921.

1.  JUDICIAL SALES—*Abatement for Deficiency Not Discovered Until After Confirmation of Sale if Ignorant Thereof.*

    A purchaser of land judicially sold by the acre may have an abatement from the unpaid purchase money, for a deficiency in the estimated quantity of the land on which the aggregate price was based, as ascertained by a subsequent survey and established by proof, although discovery of such deficiency was not made, nor the demand for abatement set

up, until after confirmation of the sale and execution of the purchase money notes, provided the purchase was made in ignorance of such deficiency. (p. 449).

2. SAME—*Abatement for Deficiency in Quantity of Land Because of Lack of Title Where Purchase Ignorant Thereof.*

In the case of such a sale, abatement from unpaid purchase money may be had, also, for a deficiency in the quantity of the land, due to total lack of title to a portion thereof, in the person in whose name it was sold, on discovery thereof and demand for abatement after confirmation of the sale, if the purchase was made in ignorance of such want of title. (p. 449).

3. SAME—*Caveat Emptor Rule Inapplicable Where Quantity Deficient Upon Survey or Because of Want of Title.*

In both of such cases the rule *caveat emptor* is inapplicable; for the reason, in the first, that the purchaser was under no duty to ascertain the quantity of the land, before confirmation of the sale; and, in the second, that there was a total failure of consideration within the legal meaning of the terms, to the extent of the deficiency. (p. 449).

4. SAME—*Answer to Rule Against Purchaser for Purchase Money May be Filed Any Time Before Entry Although Respondent in Default.*

An answer to a rule against a purchaser of land under a judicial sale, to show cause why a decree shall not be entered against him, for the amount of his purchase money notes, and the land sold to satisfy the lien thereon for the amount of the decree, may be filed at any time before entry of the decree, notwithstanding the respondent is in default as to the filing of his answer, and the court cannot properly reject a sufficient answer to the rule tendered before entry of the decree, on the ground of delay. (p. 449).

Appeal from Circuit Court, Upshur County.

Suit by Young & McWhorter against J. F. Smith and others. Decree for plaintiff, and defendants appeal.

*Reversed and remanded.*

*Morton & Wooddell,* for appellants.
*Young & McWhorter,* pro se.

POFFENBARGER, JUDGE:

The claim asserted by the appellants and denied by the

decree now under review is that of right of abatement of unpaid purchase money of standing timber judicially sold by the acre, on the ground of failure of title to part of the timber. Right of abatement on the ground of shortage in area of a tract as to which there was no failure of title, resulting from mere error as to quantity, shown by measurement, is in issue also, and is not strongly resisted. The decree seems to concede it.

The former claim is made in respect of a tract of land treated, in the sale of the timber thereon, as containing 228.6 acres, and the latter in respect of a tract so treated, as containing 100 acres. Both were combined in the sale with another containing 190.8 acres and the aggregate acreage, 519.4, was sold for $8,829.80, the equivalent of $17.00 per acre. By reason of superior adverse title, it is averred, the purchaser lost 172.6 acres of the 228.6 acre tract, and the 100 acre tract appears by measurement made after the sale, to be short to the extent of 32.9 acres. No complaint is made as to the third tract.

At the same sale, the appellant, J. F. Smith, made other large purchases of standing timber. Altogether they amounted to more than 3,000 acres. He paid part of the purchase money in cash and part of it by assignment of certain notes held by him. For the residue, he executed his two notes for $3,914.40 each, with Dora E. Smith as surety therein, and secured payment thereof by a vendors lien on the three tracts above mentioned, one of which notes has been paid. Right of abatement from the other, of the amount lost by the deficiency in area, is the claim giving rise to this controversy.

With the exception of one-fifth thereof owned by E. F. Kummer, the timber had belonged to the infant heirs of Henry Spies, deceased, subject to the dower right of his widow. As guardian of the heirs, Kummer prosecuted a summary proceeding under the statute for the sale of their interests therein, in view of the limitation of time for the cutting of the timber imposed by the conveyance thereof to Spies. He in his own right and the widow filed answers in which they expressed their willingness to join in conveyances

of the timber, in the event the court should decree a sale thereof.

The decree ordering the sale appointed the appellees herein special commissioners to execute it and the two purchase money notes above described were made payable to them. The makers thereof having declined to pay the last one, the payees obtained a rule in the proceeding, requiring them to show cause why a decree should not be entered against them for the amount of the note and interest thereon and for resale of the timber to satisfy such decree. The answer to the rule, filed in due time, set up the defense already indicated. In the order filing it and a general replication thereto, right was reserved to the plaintiffs in the rule to demur or except to the answer.

As to the 228.6 acre tract, the answer discloses a lap or interlock between it and another tract containing 268½ acres granted by the Commonwealth of Virginia to William Parker Foulke, October 31, 1849. The 228.6 acre tract had been originally granted by said Commonwealth to Jacob Amick, August 31, 1846, as containing 200 acres. In 1882, it was judicially sold and conveyed to C. H. McClung, who later conveyed it to certain trustees. While McClung owned it, he entered into an agreement with the heirs of Foulke, to submit to arbitration the dispute between him and them, as to the title to the land embraced in the interlock, and there was an award against him and in their favor, which was accepted, acquiesced in and observed; McClung having yielded possession of the interlock, and the Foulkes having entered thereon and since held possession thereof for more than twenty years. It is further averred that the Amick title to the land embraced in the interlock became forfeited for nonentry for taxation, between the years 1873 and 1886, and was transferred by the statute to the Foulkes, they having been in possession of the land and paid the taxes thereon. As to the 100 acre tract, it averred a sale of a larger acreage than it contained. It also charged a sale of all three tracts by the acre, not in gross, the sale price having been $17.00 per acre.

It was excepted to upon four specific grounds, namely; that the rule *caveat emptor* precluded the right of abatement claimed; that the commissioners had exceeded their authority in selling by the acre, the decree not having authorized sale in that manner; that, as to the 228.6 acre tract, there could be no abatement because the shortage was due to loss of land actually sold, by defect in title, not mere error as to area; and that there had been no ouster of the purchasers from the lands.   The third exception was sustained and leave granted to the plaintiffs, to reply to so much of the answer as related to the 100 acre tract, within 30 days, and to the respondents, to file an amended answer in the clerk's office, within the same period.

The amended and supplemental answer containing only one material averment in addition to those of the original, namely, mutual mistake concerning the areas of the two tracts in question, was not filed within the time allowed, but was tendered on the day on which the decree complained of was entered.   An objection to the filing thereof, on two grounds, (1) insufficiency in law and (2) delay in the tender thereof, was sustained.   The decree provisionally allowed an abatement for the apparent loss in respect of the 100 acre tract, adjudicated absolute liability as to the residue of the note and ordered sale of the two tracts of land, on failure to pay the amount of the decree within 30 days.   The rights of the parties respecting the claim of abatement for the shortage in the 100 acre tract were reserved for future determination.

Legal sufficiency of the amended answer being assumed, the court could not properly reject it on the ground of delay in the tender thereof.   Though the respondents were in default, they were not remediless.   As the rule sought relief against them, it was analogous to a bill an answer to which may be filed at any time before final decree, notwithstanding delay amounting to a default.   *Ash* v. *Lynch,* 72 W. Va. 238; *Waggy* v. *Waggy,* 77 W. Va. 144.

If the averments of the answers, as to the deficiency in the 100 acre tract are true, right of abatement therefor is clear, unless our decision in *Castleman* v. *Castleman,* 67 W.

Va., 407, is wrong and should be overruled.    It is directly in point.    The right of abatement claimed and upheld therein was based upon a deficiency in land judically sold by the acre, as containing a larger area than it had, and the rule *caveat emptor* was held to be inapplicable in the case of a mistake as to area in such case. , No departure in that decision from sound legal and equitable principles and precedents has been brought to our attention in the argument, nor have we been able to find any.    Believing it to be sound, we adhere to it.

The harshness of the rule *caveat emptor,* in its application to states of fact like or similar to that averred in respect of the 228.6 acre tract of land, is more apparent than real, when considered in the light of the reason of the maxim. It does not bind the purchaser beyond his knowledge or means of knowledge.    But, in judicial opinion well and firmly settled in this state and in most of the other jurisdictions in this country, the exigencies of commerce and efficient and orderly administration of justice make it necessary to bind him to that extent.    As to defects in the title to land judicially sold and its quality, he has unrestricted and unhampered opportunity for investigation and procurement of knowledge in advance of his purchase, as well as after it and before compliance with the terms thereof.    He is under no duty to buy, and, if he finds the title bad before sale, he may refrain from bidding.    If he obtains such knowledge after the purchase and before confirmation, he may be relieved from his purchase.    The court will not knowingly force him to take and pay for a bad or doubtful title.    In this country of recorded title papers, it is within his power readily to discover most of the defects in paper titles offered him; and to require him to examine the records of the cause in which the sale is made and the recorded title involved, as found elsewhere, imposes no great hardship on him.    It is almost uniformly held that he must do so and cannot, after confirmation of the sale, have any relief for any defect of title disclosed by the records or otherwise, unless he has been induced to forego investigation by fraud or misrepresentation.    *Castleman* v, *Castleman,* 67

W. Va. 407; *Headley* v. *Hoopengarner,* 60 W. Va. 626; *Williamson* v. *Jones,* 43 W. Va. 563; *Capehart* v. *Dowery,* 10 W. Va. 130; *Shields* v. *McClung,* 6 W. Va. 79; *Cooper* v. *Hepburn,* 15 Gratt. 551; *Young's Adm'r & Bowyer* v. *McClung,* 9 Gratt. 336; *Worsham* v. *Hardaway,* 5 Gratt. 60; *Threlkelds* v. *Campbell,* 2 Gratt. 198; *Finley* v. *U. S. Bank,* 11 Wheat. (U. S.) 304; *Farmers Bank* v. *Peter,* 13 Bush, (Ky.) 591; 11 C. J., 44; 24 Cyc. 57-59, citing may cases. He is required to go even beyond the record of the suit and that of the title involved. He is under duty to inspect the land itself and take notice of anything discovered on it which may suggest the existence of an outstanding claim or hostile title. *Young's Adm'r* v. *McClung,* 9 Gratt. 336, 359; *Brown* v. *Wallace,* 4 Gill & J. (Md.) 479; *Bonnett* v. *Hamill,* 2 Sch. & Lef. 577.

This almost universal holding of the courts evidently rests in part upon the theory in jurisprudence, that the courts do not sit nor exercise their jurisdiction for the accomplishment of ends and purposes within the power of the citizen, without their aid. For what he can do himself, he stands in no need of judicial aid, and there is no good reason for allowing him to come into a judicial proceeding as a purchaser or otherwise, in a negligent and careless manner involving him in difficulties, and then appeal to the court for its aid. To avoid such consequences and at the same time impose the duty of care and prudence upon the bidder, the law tells him in advance that the court offers only such title as the debtor or other person whose land has come within its jurisdiction for sale, has, and without warranty as to its soundness, wherefore he will take it, if at all, at his own risk. In some jurisdictions, relief is denied him, even though he discovers the defect before confirmation and sets it up in defense. Under our rule and according to the weight of authority, however, he will be relieved on a disclosure of bad title before confirmation. The equitable principle of denial of jurisdiction, on the ground of lack of necessity for its exercise, has been announced by this court. *George, Trustee* v. *Zinn,* 57 W. Va. 15.

As administered here and in most of the other American

jurisdictions, the law is not essentially different from what it is held to be in England.   There the court refers the title to a commissioner for investigation before the sale is completed.   . If he finds it defective, the purchaser is released.   Here he is released, if the purchaser himself, upon investigation, finds it defective before the sale is completed and sets up the defect as ground of his application for release, before confirmation.   Even in England, there is no warranty of title and the rule *caveat emptor* applies.   It is said it does not apply in New York where the theory of a judicial sale is said to be practically the same as that obtaining in England.   The difference between the law in those two jurisdictions and ours seems to be limited to the greater precaution taken there for protection of the purchaser before he completes the sale.   The rule *caveat emptor* applies, but in a narrower and less rigid form.   It does not apply to the extent of precluding relief on the ground of defect of title, sought before completion of the sale.   Neither does it do so here.   This is indicated by Lord Eldon's observation in *Toulmin* v. *Steers,* 3 Mer'w. R. 223, that the court of chancery employs its officer to investigate titles, but does not warrant them.

The occasional hardships incident to the operation of this ancient, universal and all pervading   principle have not escaped the attention of the legislatures.   They have dealt with it and, presumptively, have gone as far as they deem it advisable to go, in restraint and limitation of its operation, wherefore a court ought to exercise extreme caution in dealing with suggestions of further limitations thereof.   In this state, the legislative limitation is found in sec. 8 of ch. 132 of the Code, maintaining   the title of the purchaser against errors in the decree of sale, after confirmation.   Ignorance of other cases in which relief might have been given against the operation of the rule, on the part of the Legislature, cannot be assumed, and it is its function, not that of the courts, to set aside the common law which the Constitution provides shall remain in force so long as it is not altered by leglislative action.

Like most other general rules and maxims of the common

law, however, it has its exceptions and limitations, some of which are not always recognized.    It is only a part of the great mass of common law and must be considered in connection with other principles thereof, equally fundamental, important and dominating within their respective spheres. One is that a purchaser is not deemed to have known what he could not have ascertained by reasonable diligence, care and prudence, nor held to have been under duty to discover it. He cannot know the area of a tract of land, ordinarily, except by a survey which he may not be able to make.    He has not absolute right to go upon the land, while it is owned by another, nor until right of possession vests in him.    Mere inspection thereof will not disclose its area.    Surveys are expensive and he need not incur the expense, before he purchases.    For these reasons, perhaps, and possibly for others, he is not bound to know the area, wherefore the rule does not preclude right of abatement for mere deficiency in area, although not discovered until after confirmation.    Such are nearly all the cases in which abatement of purchase money has been allowed, or claims therefor entertained.    *Crislip* v. *Cain,* 19 W. Va. 438, in which the area depended upon location of a boundary line, which did not involve loss of title. *Castleman* v. *Castleman,* cited; *Jones* v. *Tatum,* 19 Gratt. 720; *Watson* v. *Hoy,* 28 Gratt. 698.

Many of the decisions, in their definitions of the rule, give it a scope and operation broad enough to deny relief in instances in which the purchaser gets nothing for his money, not even a defective title.    Whether it has such scope is one of the inquiries we are now required to make.    There are very few instances in which it has been allowed such scope of operation.    None in this state nor in Virginia have been found.    In *Hickson* v. *Rucker,* 77 Va. 135, the purchaser obtained substantially what he contracted for.    The sale was one in gross and his demand for an abatement was based upon failure to obtain as large a lot as he though he was buying. In *Redd* v. *Dyer,* 83 Va. 331, only a defect in title was set up, not failure to obtain any part of the property purchased. In *Long* v. *Weller,* 29 Gratt. 347, the claim was based upon failure to obtain a certain easement and a purchase made un-

der a misapprehension as to location of boundary lines, resulting in failure to obtain certain water privileges.     The purchaser had obtained substantially what he contracted for. In *Young's Adm'r* v. *McClung*, 9 Gratt. 336, the purchaser was denied relief, on the ground of fraud and his full knowledge of the facts rendering the title he purchased invalid, although the rule *caveat emptor* was applied also.     Besides, he was liable as surety for the debt for which the land was sold.     In *Threlkelds* v. *Campbell*, 2 Gratt. 198, there was nothing more than a suggestion of a possible liability for a small lien.     The purchaser and his predecessors in title had never been disturbed in their   possession of the land.     In *Cooper* v. *Hepburn*, 15 Gratt. 551, relief was sought   on grounds of mere irregularity in the sale procedure, which the court said could never hurt him, and a suggestion of a possible defect in title which was found to be entirely baseless. In none of the decisions of this court has the rule been so applied as wholly to deprive the purchaser of the benefit of his purchase, in any sense.     In *Headly* v. *Hoopengarner*, 60 W. Va. 626, the purchaser suffered only a partial loss out of a purchase made in gross.     In *Calvert* v. *Ash*, 47 W. Va. 480, the decree of sale was wholly reversed and the purchaser released.     In that case, the purchaser endeavored to maintain his purchase.     In *Capehart* v. *Dowery*, 10 W. Va. 130, the purchaser was accorded the protection of the statute, and of course he was not hurt.     It is difficult to perceive any application of the doctrine in *Shields* v. *McClung*, 6 W. Va. 79, in which it is adverted to in the opinion.

In none of these instances has a *bona fide* purchaser under a judicial sale ever been required to pay for what he did not substantially obtain.     It may have occured in a few instances in other jurisdictions.     To hold a purchaser liable for unpaid purchase money for land to which he obtained no title at all, because the person whose pretended title was sold had none, would violate a basic and fundamental principle of law, which, with others, courts of equity profess to follow.     Ordinarily, a total failure of consideration   absolves from liability and no reason is perceived why it should not do so here, if, in any sense, there was such total failure.

There are well considered cases in which such a result has been held to constitute another exception to the rule.      A purchaser under a void sale is not subject to its operation. *Boykin* v. *Cook,* 61 Ala. 472; *Barrett* v. *Churchhill,* 18 B. Mon. (Ky.) 387; *Washington* v. *McCaughan,* 34 Miss. 304; *Bartee* v. *Tompkins,* 4 Sneed (Tenn.) 623; *Burns* v. *Ledbetter,* 56 Tex. 282.      In all of these cases, the sales were held to have been void, but the reasoning of the courts put the decisions upon the ground of total failure of consideration.

If the 228.6 acre tract was sold by the acre, the units of measure were the acre and the price per acre, and if the purchaser did not secure the full number of acres bargained for there was, in a substantial sense, a total failure of consideration for every acre he did not obtain.      While the contract covered all the acres in the tract and, in some sense, constituted a purchase of the tract, it was not bought and to be paid for as a tract, but as so many acres.      In every jurisdiction, the difference between a sale by the tract or in gross and a sale by the acre is regarded as a most vital and important one.      If, in a sale by the acre, there is either a deficiency or an excess, there may be compensation, without reference to any warranty or representation, because there has been an overpayment or an agreement to overpay, or a lack of full payment.      If there is a deficiency and payment has not been made, there is clear right to an abatement.      If the estimated price has been paid, the purchaser may recover back the amount paid in excess of the price calculated upon the number of acres, as money had and received to his use, on the theory of payment without consideration. If there is an excess, the vendor may recover for it.      Hence, it is clear that the rights of the parties are measured and determined by the number of acres and the price per acre. That being so, there is a total failure of consideration to the extent of every acre of shortage, and that brings the case within an exception to the rule *caveat emptor.*

It does not necessarily follow, however, that he has right to recover back money paid in excess of the stipulated price, and disbursed by the court.      As to that, we express no opin-

ion, because the question does not arise here.    The appellants ask only abatement from purchase money due and unpaid.

Nor should an abatement be allowed, unless there is complete and absolute want of title to a portion of the land, such as would be the legal equivalent of an ouster or eviction. The case of want of title should be very clearly and conclusively established.    The purchaser cannot be allowed to avoid payment of the purchase money and then take the land.    The adverse claimant is not before the court.    If the title to the portion of the tract in question is merely defective or doubtful, the right claimed is not within the exception, because there is no total failure of consideration. And, in that case, it is within the rule *caveat emptor,* because the defect could have been discovered and ought to have been, if the averments of the answer are true.    It says the land is and has been for years in the open, actual, notorious and exclusive possession of the Foulkes.    If that is true, the purchaser should have ascertained it before he bought.    It says the title is forfeited and has been transferred.    If that is true, the records disclose the forfeiture at least.

From the conclusions stated, it follows that the answer sufficiently stated a proper case for abatement from the unpaid purchase money, to the extent of the shortage in both tracts, and the court erroneously sustained the exception to so much of the original answer as pertains to the 228.6 acre tract and rejected the amended answer.    It also erred in entering a personal decree against the appellants and ordering a sale of the land,    without having first    ascertained the amount due and unpaid on account of the purchase money, if anything.    For these errors, the decrees complained of will be reversed and the cause remanded.

*Reversed and remanded.*