In re CALIFORNIA ASSOCIATED
PRODUCTS CO.

WIL-RUD CORPORATION v.
LYNCH et al.

No. 12309.

United States Court of Appeals
Ninth Circuit.

Aug. 12, 1950.

Charles J. Katz, Los Angeles, Cal. (Samuel W. Blum, Los Angeles, Cal., of counsel), for appellant.

Craig, Weller & Laugharn, Los Angeles, Cal. (T. S. Tobin, Los Angeles, Cal., of counsel), for appellee Lynch.

Hugo A. Steinmeyer, John E. Walter and Robert H. Fabian, all of Los Angeles, Cal., for appellee Bank of America.

Aaron Levinson, Los Angeles, Cal., in pro per for appellee Levinson.

Maurice Mac Goodstein, Los Angeles, Cal., for appellee Leo Brill.

Overton, Selig & Wilson, Los Angeles, Cal., for appellee F. W. Boltz Corp.

Hugh Ward Lutz, Los Angeles, Cal., for appellee Kramer.

Before BIGGS and STEPHENS, Circuit Judges, and DRIVER, District Judge.

DRIVER, District Judge.

This is an appeal by Wil-Rud Corporation from an order of the District Court reversing on review an order of the referee approving a compromise of a controversy growing out of a receiver's sale in bankruptcy. The debtor, California Associated Products Company, a corporation, had petitioned for relief under Chapter XI of the Bankruptcy Act[1] but had failed to formulate a plan of arrangement acceptable to the creditors, and the referee on October 15, 1947 caused the debtor's assets, including the assets of its subsidiary corporation, Yankee Doodle Root Beer Bottling Company, to be sold at receiver's sale at public auction. The assets were sold to appellant, the highest bidder, for $161,000.

So far as the record shows there was no statement in any order of sale and no oral announcement prior to the sale as to the quantum of property to be sold.[2] Appellant's bid was stated to be on the same basis as that of a competing bidder whose highest offer for the "physical assets" of the debtor was $160,000. The referee's order confirming the sale dated October 22, 1947 described the property deemed to have been sold by the receiver as "all machinery, fixtures, equipment, all inventory, all lessee's improvements, all furnishings, all supplies and all finished and unfinished products located at [debtor's plant in Los

---

1. 11 U.S.C.A. § 701 et seq.

2. Immediately after the acceptance of appellant's bid had been announced the receiver's attorney made a statement as to what property he considered was covered by the sale. He described the property as consisting of certain items "and the inventory as is now * * *" and concluded by asking appellant's attorney, "Now is that clear, Mr. Katz?" Mr. Katz replied, "I can't carry all that in my head. Mr. Levinson [representing a competing bidder] read the terms of the bid. We bid on those terms. * * *" It thus appears that Mr. Katz did not definitely acquiesce in the statement made by receiver's attorney.

Angeles] together with all the other physical assets of the debtor corporation, wheresoever situated, and together with all of the physical assets of the Yankee Doodle Root Beer Company, a corporation, as of October 15, 1947 at 5 o'clock p. m." By the terms of the order the property was sold, with an exception not material here, "free and clear of any liens, charges and encumbrances." The order also recited that the assets were to be delivered "upon the signing of the within order, and payment therefor to be made concurrently with delivery to the buyer."

Appellant took over the plant of the debtor, which was then being operated by the receiver, and paid part but not all of the purchase price. Thereafter the receiver caused appellant to be cited before the referee to show cause why the balance of the purchase price should not be paid, and at the hearing, on November 7, 1947 appellant claimed it had not received all of the assets of the debtor which, under the terms of the order of confirmation, were to be delivered to the purchaser concurrently with payment of the purchase price. Appellant contended that it had submitted its bid in reliance upon a written inventory of the goods of the debtor exhibited to its agent by a representative of the receiver about ten days before the sale and that a check of the goods turned over to the appellant after the sale, made by appellant and receiver, disclosed inventory shortages amounting in the aggregate to $18,952.16. Appellant asked for an adjustment of its bid price in accordance with such shortage. Appellant also maintained that it had not received "free and clear of any liens, charges and encumbrances" as specified in the order of confirmation, about 700,000 root beer bottles and 25,000 wood shells or bottle containers, carried in the inventory at a total figure of $47,926.29. These empty bottles and wooden containers for the most part were in the possession of customers who had made deposits thereon amounting to 60 cents a case of 24 bottles. After hearing the evidence as to the claimed inventory shortage (other than bottles and containers) the referee expressed the view that appellant's contention was meritorious but deferred formal action with the suggestion that opposing counsel endeavor to reach an agreement as to the facts with reference to the controversy over the empty bottles. No formal order was ever entered and on January 6, 1948 the receiver filed a petition for leave to compromise the entire controversy with appellant. The compromise recommended by the receiver was that appellant be allowed a credit of $18,500, thereby in effect, reducing the purchase price from $161,000 to $142,500, and that appellant undertake "to hold your petitioner [receiver] harmless on any claims for refunds on cases and/or bottles up to 60 cents per wooden case containing 24 bottles * * *." After an adversary hearing the referee made formal findings of fact, conclusions of law and an order approving the receiver's proposed compromise. Certain dissatisfied creditors petitioned for review and the District Court, without receiving any additional evidence, but solely upon the record made before the referee, reversed the referee's order. This appeal by ·Wil-Rud Corporation followed. The appellees are the creditors and the receiver.

At the outset we are faced with appellees' contention that the appeal should be dismissed for the reasons that the filing of the notice of appeal was not timely, that the appellant was not a party to the proceedings before the referee on receiver's petition to compromise, and that the appellant was not aggrieved by the District Court's order from which the appeal was taken.

The district court filed a written memorandum opinion which contained a statement that "the order of the Referee in approving the compromise is hereby reversed." A minute entry by the clerk of the filing of a memorandum opinion was made December 16, 1948. The court's formal findings of fact, conclusions of law and order reversing the order of the referee were filed and docketed May 24, 1949. The notice of appeal was filed June 20, 1949. Since no written notice was given to the aggrieved party of the entry of the order complained of, the appeal in the present case should have been taken within

forty days from such entry.[3] What, then, constituted the entry of the order?

In Rosenberg v. Heffron, 131 F.2d 80, this Court held, in a situation similar to that of the case at bar, that in bankruptcy proceedings the notation of the order in the clerk's docket constitutes the entry of the order. Under General Order 37, 11 U.S.C.A. following section 53, as amended, the Rules of Civil Procedure not inconsistent with the Bankruptcy Act or with the General Orders are applicable in bankruptcy proceedings. Rule 58, 28 U.S.C.A., which is not inconsistent and therefore applicable here, specifies that the notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment.[4] The memorandum opinion, aside from the question whether it constituted a definitive, appealable order at all, was not noted in the clerk's docket and the order of the District Court reversing the order of the referee was not, therefore, entered until the docketing of the formal findings and order on May 24, 1949. The appeal taken within forty days after that date was in time.

As to appellees' contention that appellant was not a party before the referee it should be remembered that the controversy which ultimately led to the appeal grew out of a receiver's sale in bankruptcy at which appellant was the successful bidder and the purchaser. A purchaser at such a judicial sale thereby becomes a party to the proceedings as to questions thereafter arising affecting his bid and he may appeal from an order by which he is aggrieved.[5] In the present case appellant as the purchaser at the receiver's sale was cited to appear and did appear before the referee in response to an order to show cause why it should not be required to pay the full amount of its bid. From that point on, at every stage, the proceedings directly and vitally affected appellant's interests. The effect of the District Court's order was to require appellant to pay $18,500 more than it would be required to pay under the order of the referee. We think that appellant was a party to the proceedings before the referee, that it was aggrieved by the order of the District Court, and that it is entitled to prosecute the appeal.

Passing now to the merits, the Bankruptcy Act, § 27, 11 U.S.C.A. § 50, authorizes a receiver or trustee, with the approval of the court, to compromise any controversy arising in the administration of the estate upon such terms as he may deem appropriate. The power to compromise is expressly granted in broad, unlimited terms. Its vests wide discretion in the receiver and in the supervisory court. A petition by a receiver for approval of a compromise is addressed to the sound discretion of the court, and an order approving a compromise should be reversed only for clear abuse of discretion.[6]

The District Court did not expressly find that the referee had abused his discretion in approving the compromise, and assuming for the moment that there was a substantial controversy existing between appellant and the receiver, there is no basis in the record for such a finding. It appears that in all probability in the absence of settlement there would have been contested litigation and that it would have entailed considerable delay and expense. As to what the ultimate outcome of the litigation would have been we are not now directly concerned. The primary purpose of a compromise settlement is to avoid the necessity

3. See Bankruptcy Act, § 25, sub. a, 11 U.S.C.A. § 48, sub. a.

4. See also, In re D'Arcy, 3 Cir., 142 F.2d 313, and Collier on Bankruptcy, (14th ed.) Sec. 25.06.

5. Blossom v. Milwaukee Railroad Company, 1 Wall 655, 68 U.S. 655, 17 L.Ed. 673; Williams v. Morgan, 111 U.S. 684, 4 S.Ct. 638, 28 L.Ed. 559; Kneeland v. American Loan & Trust Co., 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379; In re Strunk's Lane & Jellico Mountain Coal & Coke Co., Inc., D.C., 64 F.Supp. 731; 2 Am.Jur. 959; 4 C.J.S., Appeal and Error, § 201, page 381.

6. Pullman Couch Co. v. Eshelman, 4 Cir., 1 F.2d 885; In re Riggi Bros. Co., 2 Cir., 42 F.2d 174; In re Prudence Co., 2 Cir., 98 F.2d 559; Scott v. Jones, 10 Cir., 118 F.2d 30; In re Paley, D.C., 26 F.Supp. 952.

of determining sharply contested and dubious issues.[7] It is sufficient if we can say that the outcome would have been doubtful. If the claim of the appellant had substantial foundation and was not clearly invalid as a matter of law then there was no abuse of discretion on the part of the referee in approving the compromise.

The District Court did, in effect, find that appellant's claim was without substantial foundation. It found that the sale of the assets of the debtor was not made on the basis of any inventory and that appellant as purchaser "was not warranted in relying upon nor did it rely upon the inventory in making said bid." To reach that result, however, the Court was obliged to disregard the findings of the referee and make new findings of its own.[8] As above stated the District Court did not hear any additional evidence. All of the witnesses before the referee testified in person rather than by deposition. The referee was therefore the initial and primary arbiter of the facts and his findings were based upon evidence which was in many respects conflicting. The District Court was not justified in disregarding the referee's findings if they were based upon substantial evidence and were not clearly erroneous.[9]

The referee found that in making its bid appellant relied upon an inventory shown to its agent, a Mr. Sam Rudolph, and that there was a shortage in the property delivered to appellant as compared with the inventory. It was not disputed that a representative of the receiver did show an inventory of the debtor's assets to Mr Rudolph and to other bidders a short time prior to the sale. Mr. Rudolph testified before the referee that about ten days before the sale he visited debtor's plant, which was then in charge of the receiver, and was

handed an inventory and was told that everything shown in the inventory was on hand with the exception of "some Monterey grape juice." (Appellant made no claim to shortage on account of that item.) Mr. Rudolph further testified that he could not tell from looking at the property whether there was any shortage, and that appellant relied upon the inventory in making the purchase. After the sale receiver's representatives checked over the property actually delivered to appellant against the inventory previously exhibited to appellant's agent and prepared, or at least participated in the preparation of, a document designated "Inventory Shortages * * *" setting forth a detailed list of shortages aggregating $18,952.16. Moreover, it is not disputed that the inventory shown to Mr. Rudolph listed about seven hundred thousand root beer bottles and upward of twenty-five thousand wooden cases of an aggregate value of $47,976.29 and that for the most part whatever bottles and cases the debtor owned at the time of the sale were in the possession of customers subject to claims for deposits of 60 cents for each case of 24 bottles.

The District Court in its memorandum opinion, and appellees in their briefs, stress the point that the inventory shown to appellant's agent was prepared as of July 28, 1947, before receiver took over the debtor's plant, and that no reasonable person in purchasing the assets of a going concern in October would be justified in relying upon an inventory taken in July. But the inventory, which was introduced in evidence and is written in longhand, does not show on its face when it was taken or by whom. Mr. Rudolph testified before the referee that he did not know that the business had been operated by the debtor and by the receiver after the inventory was

---

7. See In re Prudence and In re Riggi, cited in footnote 6.

8. In the introductory portion of its findings the District Court stated: "The Court cannot adopt the Findings of the Referee in this matter and therefore finds: * * *."

9. Dunsdon v. Federal Land Bank, 8 Cir., 137 F.2d 84; Rhodes v. Federal Land

Bank, 8 Cir., 140 F.2d 612; Powell v. Wumkes, 9 Cir., 142 F.2d 4; Ashton v. Sentney, 9 Cir., 145 F.2d 719; Reich v. Industrial Com'r of New York, 2 Cir., 145 F.2d 759. See also Bankruptcy General Order No. 47, 11 U.S.C.A. following Section 53, which provides that " * * * the judge shall accept his [the referee's] findings of fact unless clearly erroneous."

taken and that he was not told by the receiver's representative that the inventory was taken on July 28. We think that the referee was justified in concluding that there was a substantial controversy between appellant and the receiver as to whether, in accordance with the terms of the order of confirmation of sale the appellant received "all inventory" of the debtor "free and clear of any liens, charges and encumbrances."

■ Appellees also contend, as the District Court concluded, that the appellant's refusal to pay the balance of the purchase price was unwarranted because it was in effect a collateral attack upon the order of confirmation, and that appellant's proper remedy was an action to rescind the contract of sale. The contention, we think, is based upon a misconception of appellant's position. It did not attack the order of confirmation but on the contrary asserted that the receiver had failed to carry out the terms of the order. The order provided that payment of the purchase price be made concurrently with delivery of the assets.

It was appellant's claim that the assets had not been delivered because it had not received "all inventory" free and clear of encumbrance. Appellant asked the referee to construe his own order, and the referee did construe it, in accordance with the interpretation placed upon it by appellant. Nor do we think that in the circumstances of the present case the rule of *caveat emptor* applied or that appellant's only remedy was an action to rescind the sale. When property has been sold under a representation or warranty as to quantity by a trustee or receiver the court in a proper case may allow a deduction from the purchase price because of shortages.[10]

We are unable to say as a matter of law that the appellant's claim was clearly invalid or without substantial foundation, and it does not appear that the referee abused his discretion in approving the compromise settlement recommended by the receiver.

The order of the District Court is reversed.

10. See 6 Remington on Bankruptcy (4th ed.) 66; Collier on Bankruptcy (14th ed.) 1588; 50 C.J.S., Judicial Sales, § 31, page 626; Hall v. McGehee, 5 Cir., 37 F.2d 854. See also Young & McWhorter v. Smith, 88 W.Va. 445, 107 S.E. 110, 113, 114; General Electric Co. v. Interstate Electric Co., 201 Mo.App. 22, 209 S.W. 562, 563; Cypress Lumber & Shingle Co. v. Tillar & Wilson, 73 Ark. 354, 84 S.W. 490.