519 F.2d 1274
 In the Matter of EQUITY FUNDING CORPORATION OF AMERICA, a
Delaware Corporation, Debtor.
BACHE & CO. INCORPORATED et al., Objectors-Appellants,
v.
Robert M. LOEFFLER, Trustee, Appellee.
 No. 74-3394.
 United States Court of Appeals,
Ninth Circuit.
 July 21, 1975.
 
 Everett B. Clary (argued), Los Angeles, Cal., for objectors-appellants.
 Marvin Schwartz (argued), New York City, for appellee.OPINION
 Before WRIGHT and WALLACE, Circuit Judges, and POWELL,* District Judge.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 This is an appeal from a district court order in proceedings for the reorganization of Equity Funding Corporation of America (EFCA) pursuant to Chapter X of the Bankruptcy Act. (11 U.S.C. § 501 et seq.) The order authorized the Trustee of EFCA to enter into a settlement (Amended Compromise) which arose out of the Illinois Liquidation of EFCA's wholly-owned subsidiary, Equity Funding Life Insurance Company (EFLIC).
 
 
 2
 The appellants appeared below and objected to the Amended Compromise insofar as it established a $2 million fund for the benefit of three classes and two individuals who filed fraud claims in the liquidation proceedings. The fund is to be used to pay the fraud claimants' attorneys' fees in the Illinois proceedings and defray the costs of prosecuting fraud claims in the Multidistrict Equity Funding Litigation in California (MDL).[1] Appellants' objections were overruled in the court below. We affirm.
 
 I.
 
 3
 EFCA, a holding company engaged in the sale of life insurance and mutual fund shares, conducted its business through wholly-owned subsidiaries. EFLIC, one subsidiary, was a life insurance company incorporated in Illinois with its principal place of business in California.
 
 
 4
 EFCA had for many years been inflating its earnings and assets in its published financial statements in fraud of its stockholders and creditors. To further that fraud, EFLIC wrote fictitious life insurance policies which it sold to reinsurers. EFLIC also collected spurious death claims it filed on behalf of fictitious insureds.
 
 
 5
 In March 1973 this scheme collapsed, and the following month EFCA filed for reorganization under Chapter X of the Bankruptcy Act. The Illinois Director of Insurance (Director) instituted a separate action against EFLIC in Illinois and seized its assets. As an insurance company, EFLIC was outside the jurisdiction of the federal bankruptcy action. (11 U.S.C. § 22.)
 
 
 6
 After a determination that EFLIC was insolvent, the Director initiated liquidation proceedings under Illinois law.[2] The Trustee was opposed by a number of other parties with claims to the assets in the hands of the Director including defrauded insurance companies which had purchased non-existent EFLIC policies, other creditors, banks holding liens on EFLIC stock, and a variety of parties seeking recovery against EFLIC for its part in the manipulations and misrepresentations about EFCA stock. The Director also had claims against EFCA which were based on intercorporate transactions.
 
 
 7
 The Director filed a plan of liquidation of EFLIC (Original Compromise) in which EFLIC claims against EFCA were settled and the reinsurers and lien holders obtained shares of the EFLIC assets and stock. The Trustee was to get:
 
 
 8
 (1) a release of claims against EFCA by the Director and reinsurers and lienholders;(2) the assumption of EFLIC's in force life insurance policies by Northern Life Insurance Company (Northern), a wholly-owned and solvent subsidiary of EFCA, a transaction worth $4.7 million to Northern;
 
 
 9
 (3) a return of Northern stock certificates which were alleged to have been fraudulently conveyed or transferred as a preference from EFCA to EFLIC and worth approximately $32 million;
 
 
 10
 (4) a right to EFLIC's liquid assets following settlement of the other claims, valued at $3.0 to $3.5 million.
 
 
 11
 The fraud claimants objected to the plan. The question whether they had standing to sue in a liquidation proceeding was one of first impression in Illinois. The Director was sufficiently concerned about the prospect of the successful prosecution of these claims and/or the attendant delay in obtaining a ruling on these issues that he felt it prudent to settle them.
 
 
 12
 In return for a stipulated settlement of those claims against EFLIC, the Director established a $2 million fund to be used to pay the fraud claimants' legal fees in the Illinois proceeding and to defray the continued costs of the fraud claimants in the MDL. The stipulation required that, "No costs or expenses incurred in opposition to or support of any Plan of Reorganization of EFCA shall be paid out of the Settlement Fund." The funds could be disbursed only with the approval of the MDL judge.
 
 
 13
 The $2 million fund would be comprised of $750,000 contributed by the reinsurers and $1.25 million from the liquid and unliquid assets of EFLIC.[3]
 
 
 14
 The Trustee sought district court approval of the Amended Compromise which reflected the settlement with the fraud claimants in Illinois. A bankruptcy judge sitting as special master recommended approval and the district court so ordered.
 
 
 15
 Appellants here are a group of fraud claimants who hold or formerly held EFCA stock and several creditors of the bankrupt. Technically, they would be considered part of the settlement class in the liquidation proceeding. However, all appellants are defendants in the MDL proceedings. They are being sued in the various cases as aiders and abettors, underwriters, insiders, and tippees and tippers. Hence they oppose a settlement which places in the hands of the class lawyers (who are also counsel for the purported classes in the MDL) funds to finance the costs of the cases against themselves. As creditors and potential creditors of EFCA, their argument focuses on the impact of the settlement on the bankrupt estate.
 
 II.
 
 16
 The appellants concede the validity of the Original Compromise. They object only to the Amended Compromise. The issue presented on this appeal is whether it was reasonable for the Trustee to give up approximately $1.25 million under the Amended Compromise in order to reach a settlement with the Illinois Director and thereby avoid the risks inherent in pursuing the Original Compromise.
 
 
 17
 The standard of review in this case is limited to whether there has been a clear abuse of discretion in the district court. The court in In re California Associated Products Company, 183 F.2d 946, 949 (9th Cir. 1950), held that
 
 
 18
 (a) petition by a receiver for approval of a compromise is addressed to the sound discretion of the court, and an order approving a compromise should be reversed only for clear abuse of discretion.
 
 
 19
 Accord, A & A Sign Company v. Maughan, 419 F.2d 1152, 1155 (9th Cir. 1969); 2A Collier on Bankruptcy P 27.05 at 1094-1095 (14th Ed.).
 
 
 20
 It is not necessary for this court to find that the fraud claimants would have prevailed had their claims been litigated.
 
 
 21
 The primary purpose of a compromise settlement is to avoid the necessity of determining sharply contested and dubious issues. It is sufficient if we can say that the outcome would have been doubtful. If the (opposing claim) had substantial foundation and was not clearly invalid as a matter of law then there was no abuse of discretion on the part of the referee in approving the compromise.
 
 
 22
 In re California Associated Products Company, supra, 183 F.2d at 949-950 (footnote omitted).
 
 
 23
 The focus of our inquiry is whether the settlement entered into by the Trustee was reasonable given the particular circumstances of this case. The Supreme Court held in Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 425 (1968), that the district court must
 
 
 24
 form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.
 
 III.
 
 25
 The Trustee sought and was granted an injunction in the district court enjoining all claims directly against EFCA subsidiaries and assuming such claims for adjudication in the bankruptcy court. Appellants argue that the injunction motion is clear recognition that settlement with the EFLIC fraud claimants would be a profligate waste of the debtor's assets and totally unnecessary. They contend that had the injunction been extended to EFLIC the Amended Compromise could have been avoided.
 
 
 26
 This argument ignores the fact, conceded by appellants in their acceptance of the Original Compromise, that the bankruptcy court had no jurisdiction over the Illinois liquidation of EFLIC. The cases cited by appellants are inapposite. In re Imperial "400" National, Inc., 429 F.2d 671 (3d Cir. 1970) (injunction issued against bankruptcy action in another court where the issuing court clearly had jurisdiction over the assets in question); In re International Power Securities Corp., 170 F.2d 399 (3d Cir. 1948) (recognition of the equitable power of a bankruptcy court to protect by injunction the subject matter of its jurisdiction); In re Burton Coal Company, 126 F.2d 447 (7th Cir. 1942) (bankruptcy court has power to adjudicate conflicting claims to ownership of the bankrupt's stock to facilitate reorganization). These cases in no way support the claimed authority of the Trustee to extend the injunction to the fraud claims in the Illinois liquidation proceeding.
 
 
 27
 Appellants agree with the validity of the Original Compromise and thereby have conceded the jurisdiction of the Director over EFLIC's assets. They now try to raise the issue of conflicting jurisdiction. They cannot prevail because this question was properly decided by the Director and acceded to by them.
 
 
 28
 Moreover, since the injunction procedure involves the adjudication of claims in the bankruptcy court, the extension of the injunction to EFLIC claimants would merely enlarge the liability of EFCA. There is no guarantee that these claims could be more cheaply settled in the EFCA bankruptcy court than they were in the EFLIC liquidation.
 
 IV.
 
 29
 The aggregate value of the fraud claims against EFLIC was $314 million. As noted, the question whether the fraud claimants had standing to sue in the Illinois proceeding was in doubt, but the Director and other parties thought it was significant enough to be settled. The reinsurers agreed with this assessment at a cost to them of $750,000.
 
 
 30
 The Trustee took the position that a refusal to compromise might result in the successful litigation of the fraud claimants' causes of action against EFLIC. Since the Trustee and appellants had already conceded that EFCA's claims were not free from doubt,[4] it appears to have been prudent to compromise the fraud claims.
 
 
 31
 The fraud claimants' arguments that EFCA's claims should be barred because of unclean hands or that they should share equally with the other creditors posed a serious threat to the Original Compromise. As the Trustee notes, the objectors could also have opposed the assumption of EFLIC's policies by Northern on the ground that insufficient consideration was given to EFLIC's estate for them. No monetary consideration was given but only the Trustee's general agreement to compromise his claims against EFLIC.
 
 
 32
 Even if we assume that the fraud claimants' chances of prevailing were slight, the loss to the Trustee if the claims succeeded only in part could easily have exceeded the amount relinquished under the Amended Compromise. The delay involved in litigation of the claims of the fraud claimants also posed a risk to the value of the insurance business which the Trustee sought to have transferred to its Northern subsidiary. Given the adverse publicity about Equity Funding's financial stability and probity, these also appear to be legitimate fears.
 
 
 33
 Furthermore, if the fraud claimants had been forced to litigate, the reinsurers, whose claims were compromised under the original agreement, might have decided to reassert their claims in full because of the prospect that the fraud claims would upset the Original Compromise.
 
 
 34
 Although the Trustee agreed to forego up to $1.25 million which he would have received under the Original Compromise, he also stated that he would consider offsetting this amount against any claims which the fraud claimants might have against EFCA. Hence the sum might not be lost to the estate.
 
 
 35
 One consideration which militates against the settlement is that the EFLIC fund will be used to finance the costs of the MDL cases, some of which involve EFCA subsidiaries. However, the terms of the settlement preclude use of the funds to finance suits in opposition to or support of the EFCA Plan. The Trustee asserts that this bars use of the funds in suits against EFCA. Certainly, one could interpret the provision to prohibit such suits. In this light, the injunction barring suits against EFCA subsidiaries and the assumption of such claims for adjudication in the bankruptcy court might be construed as a means of limiting the usefulness of the fund for reaching EFCA assets. Since the MDL court must approve any disbursements from the fund, the Trustee has an additional means of limiting the impact of the fund with respect to EFCA.
 
 
 36
 A balancing of the adverse and positive aspects of the amended Compromise supports the Trustee's decision to agree with the Director's proposed settlement. The Trustee and the Illinois Director had ample justification for concluding that the fraud claimants had a substantial legal claim which could destabilize the basic settlement and/or result in serious delay. As in In re California Associated Products Company, supra, 183 F.2d at 950, "(i)t is sufficient if we can say that the outcome would have been doubtful."
 
 
 37
 The Trustee provided a reasoned explanation of the costs and benefits of his decision. The district court based its decision on a thorough and impartial report by a bankruptcy judge sitting as a special master. We have not been persuaded to alter that determination.
 
 
 38
 Affirmed.
 
 
 
 *
 Senior District Judge, Eastern District of Washington
 
 
 [1]
 A significant number of claims were filed in federal court by creditors and stockholders claiming fraud, violation of the securities laws and breach of fiduciary duties against a wide variety of parties including EFCA, EFLIC, their directors, accountants, underwriters, and sundry tippees and parties with inside information about the fraud. These cases were consolidated for pretrial purposes in the Central District of California
 
 
 [2]
 We need not reach the question whether certain items, the subject of the Illinois liquidation proceeding, should have been viewed as within the jurisdiction of the bankruptcy court as preferences or fraudulent transfers, or within the summary jurisdiction of the liquidation court as assets of the insurance company and therefore exempt from the bankruptcy process. Appellants do not challenge the jurisdiction of the Director over EFLIC's assets or the propriety of the Original Compromise which would have disposed of those assets
 
 
 [3]
 Under the Amended Compromise, the Trustee will receive the unliquid assets of EFLIC in addition to its liquid ones. The value of the additional assets is uncertain, but it will reduce the difference between what the Trustee receives under the Amended Compromise and what he would have received under the Original Compromise
 
 
 [4]
 Appellants' acceptance of the Original Compromise indicated that they shared the doubts of the Trustee as to whether the Trustee would have been entitled to all of EFLIC's assets free from all other claims