669 F.2d 1325
 In the Matter of WALSH CONSTRUCTION, INC., Bankrupt.
UNITED STATES of America, Plaintiff-Appellant,
v.
ALASKA NATIONAL BANK OF the NORTH and Paul Burlingame,
Trustee, Defendants-Appellees,
In the Matter of Cecilia Ruth WALSH, Gerald Patrick Walsh,
d/b/a Beaver Builders, Bankrupts.
UNITED STATES of America, Plaintiff-Appellant,
v.
ALASKA NATIONAL BANK OF the NORTH and Paul Burlingame,
Trustee, Defendants-Appellees.
 Nos. 80-3131, 80-3132.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 20, 1981.
Decided Feb. 25, 1982.
 
 Ernest J. Brown, Washington, D. C., argued, for plaintiff-appellant; Milton L. Moss, Asst. U. S. Atty., Anchorage, Alaska, Michael L. Paup, Wynette J. Hewett, Washington, D. C., on brief.
 Spencer C. Sneed, Hartig, Rhodes, Norman & Mahoney, Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before SKOPIL, FLETCHER and FARRIS, Circuit Judges.
 SKOPIL, Circuit Judge:
 
 
 1
 The United States, on behalf of the Internal Revenue Service, appeals the order of the district court affirming the bankruptcy court's confirmation of a settlement agreement between the trustee in bankruptcy and Alaska National Bank. We have jurisdiction under 11 U.S.C. § 47(a) (1976) (repealed 1978).
 
 FACTS
 
 2
 Until April 1976, Cecilia and Gerald Walsh were in the construction business, operating two separate enterprises: a partnership, Beaver Builders, and a corporation, Walsh Construction, Inc. In April 1976, the Walshes, individually and as a partnership, and Walsh Construction, Inc., filed voluntary petitions for arrangement under Chapter XI of the Bankruptcy Act. The partnership and individual arrangements were consolidated into one proceeding. The corporate arrangement was administered in a separate proceeding. The partnership and corporate proceedings were not consolidated.
 
 
 3
 Alaska National Bank was the largest secured creditor of the various debtor enterprises. The Bank had outstanding claims of between $82,862.37 and $87,768.27 against the Walshes individually and as a partnership, secured by a residence and a mobile home. The Bank also had a security interest in accounts receivable and contract rights of the individual debtors. It had a claim of approximately $139,000.00 against the corporation, secured by the corporation's equipment. The Bank filed proofs of these claims in both the partnership and corporate proceedings.
 
 
 4
 By the nature of the Chapter XI proceedings, the debtors were to remain in possession of the collateral. During this period an automatic stay was in effect that prevented enforcement of any claims against the debtors. See R.Bankr.P. 11-44(a); 11 U.S.C. § 714 (1976) (repealed). The Bank petitioned on several occasions for relief from the automatic stay so that it could foreclose on its collateral, which secured its claims at the time the arrangements commenced. Each of these motions was denied. The arrangements were finally terminated in October 1978, when the court adjudicated the debtors bankrupt. In December 1978, the court abandoned the residence, mobile home and equipment to the debtors, who in turn abandoned the property to the Bank. By this time, the collateral had allegedly depreciated significantly.
 
 
 5
 In April 1979, the trustee and the Bank asked the court to approve a settlement agreement in the corporate arrangement under which the Bank was to compromise its claims in exchange for the proceeds received from the sale of the abandoned property, as well as $50,000.00 held in a bank account, which was part of the partnership estate. The settlement was to compensate the Bank for the depreciation of the collateral during the arrangement as an expense of administration.
 
 
 6
 During the settlement hearings, the IRS, which claimed tax liens on the corporate, partnership and individual assets, objected to the settlement on the grounds that the Bank was not entitled to compensation for the loss of post-petition interest on its claims and that there was not a sufficient factual basis upon which to evaluate the legitimacy of the Bank's claim of depreciation. The IRS requested a 60-day extension during which it would be allowed discovery of facts underlying the Bank's claim. The court overruled the IRS's objections, denied the request for an extension of time, and approved the agreement with certain modifications.
 
 
 7
 The IRS appealed this determination to the district court, which affirmed the bankruptcy court's approval of the settlement agreement.
 
 DISCUSSION
 
 8
 Section 27 of the Bankruptcy Act, 11 U.S.C. § 50 (1976) (repealed 1978), authorizes the trustee in bankruptcy, with the approval of the court, to "compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate." The reasonableness of a compromise is determined by the particular circumstances of each case. See Bache & Co. v. Loeffler (In re Equity Funding Corp. of America), 519 F.2d 1274, 1277 (9th Cir. 1975). Because the bankruptcy judge is uniquely situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion. Equity Funding Corp., supra, 519 F.2d at 1276; A & A Sign Co. v. Maughan, 419 F.2d 1152, 1155 (9th Cir. 1969); Wil-Rud Corp. v. Lynch (In re California Associated Products Co.), 183 F.2d 946, 949 (9th Cir. 1950). See Port O'Call Investment Co. v. Blair (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976) (per curiam); 2A Collier on Bankruptcy P 27.05 at 1094-95 (14th ed. 1978).
 
 I. Legal Basis of Bank's Argument
 
 9
 The government contends that the bankruptcy court abused its discretion in approving the compromise settlement because the Bank had failed to establish a sufficient legal basis for the assertion of its claim. Specifically, the government insists that no authority permits the amount by which property has depreciated during a Chapter XI arrangement to be recouped by a secured creditor as an "expense of administration."
 
 
 10
 This argument misperceives the bankruptcy court's duties in approving a compromise settlement. A compromise agreement allows the trustee and the creditor to avoid the expenses and burdens associated with litigating "sharply contested and dubious" claims. California Associated Products Co., supra, 183 F.2d at 949-50. The bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim. Cf. Blair, supra, 538 F.2d at 851-52 (bankruptcy court need not conduct a mini-trial on the merits of claims sought to be compromised in a liquidation bankruptcy). It is sufficient that, after apprising itself of all facts necessary for an intelligent and objective opinion concerning the claim's validity, the court determines that either (1) the claim has a "substantial foundation" and is not "clearly invalid as a matter of law," or (2) the outcome of the claim's litigation is "doubtful." California Associated Products Co., supra, 183 F.2d at 949-50. See Equity Funding Corp., supra, 519 F.2d at 1277 (quoting Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968)). Compare Barry v. Smith (In re New York, New Haven & Hartford Railroad), 632 F.2d 955, 960 (2d Cir.), cert. denied, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980).
 
 
 11
 The bankruptcy court amply considered the various factors that determine the reasonableness of the compromise. The court was presented with the legal theories supporting the compromise agreement, and otherwise considered the hazards, complexities and expenses of the claim's litigation. The court noted that it found the Bank's legal theory persuasive, particularly since the trustee in bankruptcy, who had previously opposed the Bank vigorously, agreed with the legal basis asserted by the Bank for the compromise settlement.[1] Accordingly, we find no abuse of the bankruptcy court's discretion.
 
 II. Consolidation and Waiver
 
 12
 The government notes that the Bank's depreciation claim related principally to equipment of the corporate bankrupt. The settlement agreement was negotiated by the Bank and the trustee initially in the corporate bankruptcy. The compromise agreement, however, provides for a $50,000.00 payment to the Bank from a partnership bank account. Although the corporate and partnership bankruptcies were administered jointly, they were never consolidated. The government argues that the bankruptcy court's approval of a distribution of partnership assets to satisfy a claim against the corporate bankrupt was an abuse of discretion.
 
 
 13
 The government did not make this argument in the bankruptcy court. It did raise it in its petition for review in the district court. Under General Order 47 any issue presented by the record could be raised before the district court, even if it was not presented to the bankruptcy court. Although General Order 47 has been replaced by Bankruptcy Rule 810, this principle apparently still applies. 1 Collier on Bankruptcy P 3.03(8)(a) (15th ed. 1980). See also 2A Collier on Bankruptcy P 39.28 at 1531-32 & nn.6-8 (14th ed. 1978). This principle does not apply where the objection raises facts outside the record nor to admission of evidence to which no objection was made. Id. Because the government's objection goes to matters within the record and was raised in the district court, it is properly before this court. Rosehedge Corp. v. Sterett, 274 F.2d 786, 790 (9th Cir. 1960). Accord, Winner Corp. v. H. A. Caesar & Co. (In re Winner Corp.), 511 F.2d 1010, 1015 (6th Cir. 1975); United States v. Luther (In re Garden Grain & Seed), 225 F.2d 499, 508 (10th Cir. 1955), cert. denied, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); In re Kellar, 192 F. 830, 832 (1st Cir. 1912); In re Samuel Wilde's Sons, 144 F. 972 (2d Cir. 1906); In re Gilchrist Co., 410 F.Supp. 1070, 1074 (E.D.Pa.1976); Grimstad v. Red Owl Stores (In re Cabezal Supermarket, Inc.), 406 F.Supp. 345, 348 (D.N.D.1976); In re Elmore Cotton Mills, 217 F. 810, 819 (S.D.Ala.1914). Cf. Diamond National Corp. v. Lee, 333 F.2d 517, 528 (9th Cir. 1964) (conceded that district judge had discretion to examine issue not before referee, held discretion not abused).[2] Of course matters not raised before either the bankruptcy court or the district court may not be raised for the first time in this court. See Diamond Laundry Corp. v. California Employment Stabilization Comm'n, 162 F.2d 398, 402 (9th Cir. 1947).
 
 
 14
 As noted above, the individual and partnership estates were consolidated. They were not consolidated with the corporate arrangement. There are cases in which consolidation is proper. See, e.g., Chemical Bank New York Trust Co. v. Kheel (In re Seatrade Corp.), 369 F.2d 845, 847 (2d Cir. 1966). Yet consolidation is "a measure vitally affecting substantive rights." Flora Mir Candy Corp. v. R. S. Dickson & Co. (In re Flora Mir Candy Corp.), 432 F.2d 1060, 1062 (2d Cir. 1970). As a result, the "power to consolidate should be used sparingly because of the possibility of unfair treatment of creditors of a corporate debtor who have dealt solely with that debtor without knowledge of its interrelationship with others." Official Creditors' Committee of Geiger Enterprises v. Central Trust Co. Rochester, New York (In re Geiger Enterprises), 635 F.2d 106, 109 n.4 (2d Cir. 1980) (quoting Chemical Bank New York Trust Co. v. Kheel, supra ). See 14 Collier on Bankruptcy P 11-14.02 (14th ed. 1976). We need not decide whether consolidation would have been proper on these facts. In the absence of consolidation, it was improper to use partnership assets to satisfy a corporate debt.
 
 III. Post-Petition Interest
 
 15
 In calculating the amount of the bankrupt's debt to the Bank, the bankruptcy court included the interest on the principal obligation accruing after the Chapter XI petitions had been filed by the debtors. The IRS objected to this calculation on the ground that post-petition interest is generally not allowable out of an arrangement or bankrupt estate. The bankruptcy court rejected this contention.
 
 
 16
 As a general rule, "the accumulation of interest on a debt must be suspended once an enterprise enters a period of bankruptcy administration beyond that in which the underlying interest-bearing obligation was incurred." Nicholas v. United States, 384 U.S. 678, 685, 86 S.Ct. 1674, 1680, 16 L.Ed.2d 853 (1966). When applied to an organization undergoing a Chapter XI arrangement, as here, this principle requires that the accumulation of interest be suspended as of the date the Chapter XI petition is filed. Id. at 686, 86 S.Ct. at 1681.
 
 
 17
 An award of post-petition interest may be allowed in three exceptional cases: (1) where the alleged bankrupt proves solvent, (2) where the "collateral produces income after filing of the petition," and (3) where the collateral "is sufficient to pay interest as well as the principal of the claim." United States v. Bass, 271 F.2d 129, 130 (9th Cir. 1959). Accord, United States v. Kalishman, 346 F.2d 514, 517-18 (8th Cir. 1965), cert. denied, 384 U.S. 1003, 86 S.Ct. 1913, 16 L.Ed.2d 1017 (1966); United States v. Yorke (In re Kerber Packing Co.), 276 F.2d 245, 246-47 (7th Cir. 1960).
 
 
 18
 The Bank argues that the facts here meet the third exception, alleging that the encumbered property was sufficient to pay the principal and interest on debts to the Bank at the time the Chapter XI petitions were filed.
 
 
 19
 The bankruptcy judge did not find that the Walshes' corporation had sufficient assets at the time the Chapter XI petitions were filed to pay principal obligations and interest payments as well. Without a clear indication in the record, we cannot conclude either that there was a "fair and equitable distribution of (the) bankrupt's assets," Bass, 271 F.2d at 130, or that the compromise settlement was reasonable to the extent it allowed the bank to recover post-petition interest.
 
 CONCLUSION
 
 20
 We reverse the decree approving the settlement agreement. Any new settlement agreement must be consistent with the holding herein. In the absence of a consolidation of the partnership and corporate bankruptcy proceedings, partnership assets and specifically the $50,000.00 from the partnership's bank account cannot be used to pay creditors of the corporation. Interest accruing subsequent to the filing of the bankruptcy cannot be added to principal owed the Bank by the corporate bankrupt without proper findings supported by an adequate record, all as set forth herein.
 
 
 21
 REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 FARRIS, Circuit Judge, dissenting:
 
 22
 I disagree only with Part II of the majority opinion. The majority decides that the bankruptcy court abused its discretion when allowing partnership assets to be used to satisfy a corporate debt. The IRS raised the mixed assets argument for the first time before the district court.
 
 
 23
 In my opinion, even a brief and cursory review of the settlement documents should have put the IRS on notice that assets of the partnership and corporate estates were being commingled. Further, government counsel was present when the trustee orally advised the bankruptcy court that the funds from which the $50,000 would be taken were the result of a contract which Walsh had entered into as Beaver Builders (the partnership). The IRS could not reasonably have not known that assets of the partnership were being used in the settlement.
 
 
 24
 A creditor who is a party to a bankruptcy compromise proceeding has "some duty to move affirmatively to identify alleged factors of unfairness in the proposed compromise at the fact-finding level, not the appellate level." In re Blair, 538 F.2d 849, 851 (9th Cir. 1976). I recognize that under usual circumstances an argument can be raised for the first time at the district court level, but here I would treat the failure to raise the mixed assets argument before the bankruptcy court as a waiver which precludes its subsequent resurrection.
 
 
 25
 While, as the majority opinion points out, the partnership and corporate bankruptcy proceedings were never consolidated, in fact the administration of the two estates was not kept separate. Both sides acknowledge this. As the Bank states in its brief on appeal, "During the entire three years this matter was before the bankruptcy court, no attempt was ever made to separate the individual, partnership and corporate estates. Indeed the settlement was premised upon there being one bankruptcy estate." IRS counsel during the settlement approval hearings said, "I understand the cases are not consolidated, technically, although they're being treated jointly." This statement by IRS counsel cannot be ignored. The majority gives it less effect than I believe appropriate.
 
 
 26
 The question on appeal is whether the bankruptcy court abused its discretion in approving the settlement agreement of the parties. I recognize that we review the question de novo, but my conclusion would be consistent with that of the district court.
 
 
 
 [1]
 We do not here decide the merits of the Bank's legal theory, only that the judge did not abuse his discretion in finding that the outcome of the litigation was doubtful
 
 
 [2]
 In Novack v. Gardner (In re Novack), 639 F.2d 1274 (5th Cir. 1981) the Fifth Circuit affirmed the district court's dismissal of a petition for review by four bankrupts. The petition for review questioned for the first time the terms of a settlement agreement approved by the bankruptcy court. Although it is not entirely clear, it appears that the court merely held that the bankrupts failed to identify any factors of unfairness in the bankruptcy court and would not be permitted to bring out such facts for the first time in the district court. 639 F.2d at 1277-78 & nn.8, 10. This is consistent with our conclusion and the general rule that matters outside the record may not be raised for the first time in the district court. The court did not purport to reject the authorities cited above. The case does not appear to hold that where, as here, the alleged unfairness relates to matters on the record, they may not be raised for the first time in the district court
 There are other cases which illustrate the rule that new issues cannot be raised in the district court where their determination depends on factual questions or evidence not presented below. See Union Bank v. Blum, 460 F.2d 197, 201-02 (9th Cir. 1972) (dictum); Garfinkle v. Levin (In re Garfinkle), 460 F.Supp. 670, 672 & n.2 (S.D.N.Y.1978); In re Sam Z. Lorch & Co., 199 F. 944, 945 (W.D.Ky.1912) (dictum).