BARNES, Senior Circuit Judge:
William W. Martin (“Martin”), Robert E. Mosher (“Mosher”), and the Legal Action Committee for Marlin Investments (“LAC”), appeal from the district court affirmance of the bankruptcy court order compromising the bankruptcy controversy and approving a settlement agreement entered into between the bankruptcy trustee and the debtors. We have jurisdiction under 28 U.S.C. §' 1291 and we affirm.
I. FACTS
This appeal arises from a lengthy and complex proceeding before the bankruptcy court. For purposes of explanation, we must review the factual background leading to the filing of the petition for bankruptcy by the debtors in this action.
Between 1969 and 1975 Mosher and Martin invested in some or all of eighteen joint ventures (hereinafter “the A & C Entities” or “A & C”), each of which consisted of one or more limited partnerships, organized and sold by general partner, Barry Marlin (“Marlin”). The limited partnerships were usually offered as tax-sheltered investments. The A & C Entities owned various rental properties, leasehold interests and promissory notes receivable, some of which were subject to liabilities.
On January 1, 1976, K & K Properties, Inc. (“K & K”), a newly-formed Delaware corporation organized and controlled by William Kane (“Kane”) and Barbara Kelly (“Kelly”), assumed the management of the A & C properties. The assets and liabilities of the A & C Entities were transferred to K & K in exchange for eighty percent of the K & K stock. Kane and Kelly retained the remaining twenty percent. Marlin remained a general partner and manager of the A & C Entities.[1]
On August 19, 1976, the A & C Entities filed for protection under Chapter XI of the Bankruptcy Act. Numerous disputes arose between the appellants and other investor-creditors, the A & C Entities, K & K, and Kane and Kelly, involving the rights of the *1379 various parties in connection with the transaction in which K & K acquired the assets of the A & C Entities. The Legal Action Committee for Marlin Investments (“LAC”) was formed by Mosher and Martin to represent the interests of some of the A & C Entities investor-creditors.
The bankruptcy court approved a compromise on December 21, 1977, (“1977 Compromise”) which was negotiated by the parties to this appeal, and actively participated in by appellants. The 1977 Compromise provided for the resolution of disputes which arose from the 1976 agreement in which K & K acquired the assets of the A & C Entities in exchange for stock. Its terms provided (a) for the distribution of some of the K & K stock owned by Kane and Kelly to K & K, and (b) for the previously established Voting Trust[2] to exercise its previously established voting rights. In addition, A & C Entities released K & K and Kane and Kelly individually, for any claims or liabilities arising from any association between the parties. As a result of this compromise, certain investor-creditors, including the appellants, sued K & K for breach of contract and fraud.
In an effort to settle and satisfy the claims of the investor-creditors, several plans of arrangement were negotiated and filed with the bankruptcy court. Pursuant to the terms of the 1977 Compromise, to solicit votes of the K & K shares held by the A & C Entities, in order to approve a plan of arrangement for the settlement and satisfaction of the creditors’ claims, a K & K Prospectus and proxy solicitation were prepared on August 29, 1978. This Prospectus and proxy solicitation, along with a registration statement, were filed with the SEC in 1980. The Prospectus was prepared by K & K, and included an explanation of the transactions which had occurred, the status of the. bankruptcy proceedings, and a financial statement which purported to represent the value of K & K’s assets.
During the pendency of the bankruptcy proceedings, in March of 1978, K & K authorized the establishment of an Employee Stock Ownership Trust (“ESOT”). Appellants allege that the provisions of this ESOT, coupled with the valuation of the K & K shares, were inequitable to the investor-creditors.
On February 20, 1979, Martin filed a complaint, designated “Adversary Proceeding B,” for declaratory relief in the bankruptcy court, on behalf of himself and all other creditors, against K &■ K, Kane and Kelly. On June 4,- 1979, Martin filed an amended complaint, designated as “Adversary Proceeding D,” which requested relief, based upon allegations of fraud and violations of federal securities laws. The bankruptcy court eventually dismissed this action with prejudice on October 18, 1983. Appellants Martin, Mosher and the LAC had filed other similar litigation dealing with the same matters which were the subject of the Adversary Proceeding D.
After numerous attempts to implement and approve a plan of arrangement had failed, the bankruptcy judge filed an order on September 10, 1979, adjudicating the debtors (A & C Properties, et al.) bankrupt under Article X of the Bankruptcy Act, and appointed Gilbert Robinson (“Robinson”) as trustee to supervise the liquidation and distribution of the assets of K & K to its shareholders. Various plans of arrangement were filed in an effort to liquidate the assets of K & K and distribute the proceeds to the shareholders. Robinson became engaged in litigation in both state and bankruptcy courts. He attacked the Voting Trust and sought to gain control of K & K Properties through voting the stock of K & K owned by the A & C Entities.
The bankruptcy court, upon Robinson’s unopposed motion, entered an order on July 8, 1981, authorizing him to vote the shares of the A & C Entities (which shares constituted a majority of the total outstand *1380 ing shares in K & K), and to elect individuals to the board of directors. These persons all of whom were approved by the Bankruptcy Court, were “independent directors” proposed by Robinson.
On January 6, 1982, Robinson entered into a settlement agreement with K & K, Kane, Kelly, and Kane and Kelly Associates to provide for the distribution of the K & K assets to the shareholders. The trustee filed an application with the bankruptcy court to compromise the controversy, a notice of this application was signed by the bankruptcy court on January 26, 1982, and mailed to the creditors on February 4,1982. On June 18, 1982, after numerous hearings on the matter, the bankruptcy court approved the trustee’s application to compromise. The court on April 18, 1983, entered its order compromising the controversy, thereby adopting the terms of the settlement agreement, and it entered its findings of fact and conclusions of law to support its order. Appellants filed timely appeals to the district court from the findings and orders of the bankruptcy court. The district court entered its order on June 22, 1984, summarily affirming the bankruptcy court in all respects, finding that the bankruptcy court had committed no error of law and had not committed an abuse of discretion. The appellants filed a timely appeal to this court from the district court’s affirmance of the bankruptcy court. Both the district court and this court have jurisdiction to review the decision of the bankruptcy court under 28 U.S.C. §§ 1293 and 1334.[3]
II. DISCUSSION
The sole issue raised on appeal is whether the district court erred in affirming the bankruptcy court’s approval and implementation of a 1982 settlement agreement between the bankruptcy trustee and the debtors where the agreement was objected to by certain creditors.
In an appeal from the district court’s affirmance of a decision of the bankruptcy court, our role is essentially the same as that of the district court, and we are, in essence, reviewing the final order of the bankruptcy court. In re Global Western Development Corp., 759 F.2d 724, 726 (9th Cir.1985) (per curiam).
We review the bankruptcy court’s findings of fact under the “clearly erroneous” standard and its conclusions of law de novo. In re Global Western, 759 F.2d at 726. However, the bankruptcy court’s order approving the trustee’s application to compromise the controversy is reviewed for an abuse of discretion. In re Transcontinental Energy Corp., 764 F.2d 1296, 1298-99 (9th Cir.1985); Matter of Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir.1982); In re Blair, 538 F.2d 849, 851 (9th Cir.1976).
A. Validity of the Compromise
Under Section 27 of the Bankruptcy Act, 11 U.S.C. § 50 (1976) (repealed 1978),[4] a trustee “ ‘may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate.’ ” In re Transcontinental, 764 F.2d at 1298 (citation omitted), Matter of Walsh, 669 F.2d at 1328. The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious *1381 claims. Matter of Walsh, 669 F.2d at 1328 (citing In re California Associated Products Co., 183 F.2d 946, 949-50 (9th Cir.1950)). The law favors compromise and not litigation for its own sake, In re Blair, 538 F.2d at 851, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court’s decision must be affirmed. See Matter of Walsh, 669 F.2d at 1329. Thus, on review, we must determine whether the settlement entered into by the trustee was reasonable, given the particular circumstances of the case. In re Equity Funding Corporation of America, 519 F.2d 1274, 1277 (9th Cir.1975).
Appellants argue several grounds for reversing the bankruptcy court’s approval of the compromise agreement. We address each separately, in turn.
1. Burden of Proof and Burden of Persuasion Required to Support Approval of Compromise.
Appellants first challenge the bankruptcy court’s conclusion of law, affirmed by the district court,[5] which provided that where a compromise has been negotiated in good faith by a trustee, and is reasonably believed by him to be the best compromise negotiable under the facts of the given case, the court should approve the recommended settlement. Appellants allege that such a conclusion not only misstates the law, but that it places the burden on the objectors to prove that the settlement agreement is not fair, equitable and in the best interest of the creditors.
It is clear that there must be more than a mere good faith negotiation of a settlement by the trustee in order for the bankruptcy court to affirm a compromise agreement. The court must also find that the compromise is fair and equitable. See, e.g., Citibank, N.A. v. Baer, 651 F.2d 1341, 1345-46 (10th Cir.1980).
In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:
(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.
In re Flight Transportation Corporation Securities Litigation, 730 F.2d 1128, 1135 (8th Cir.1984) (citations omitted), cert. denied, — U.S. —, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985). Accord, Matter of Jackson Brewing Co., 624 F.2d 605, 607 (5th Cir.1980) (court must review the particular facts and circumstances with adequate detail and explanation to determine (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise). The record reflects the careful consideration given to the compromise by the bankruptcy court and the inordinate amount of expertise which went into the ultimate compromise approval. See In re Blair, 538 F.2d at 851 n. 1.
The trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved. In re Hallet, 33 B.R. 564, 565-66 (Bankr.D.Me.1983). It is clear from the record that the trustee met this burden. The bankruptcy court held five days of hearing on the trustee’s application for compromise. During the hearings, the bankruptcy court weighed the evidence presented, heard testimony on the fairness of the compromise, and considered the objections presented by the appellants.
*1382 Appellants argue that the bankruptcy court had ignored their objections to the compromise and had, in essence, shifted the burden of proof to them to show that the compromise was not negotiated in good faith. However, appellants’ argument is not supported by the record. In addition, while creditors’ objections to a compromise must be afforded due deference, such objections are not controlling, In re Transcontinental, 764 F.2d at 1299; accord, In re Hallet, 33 B.R. at 566; In re The General Store of Beverly Hills, 11 B.R. 539, 541 (Bankr. 9th Cir.1981), and while the court must preserve the rights of the creditors, it must also weigh certain factors to determine whether the compromise is in the best interest of the bankrupt estate. Matter of W.T. Grant Co., 4 B.R. 53, 69 (Bankr.S.D.N.Y.1980).
Any possible inference in the conclusion of law that all that is required for the bankruptcy court to affirm an agreement is the good faith negotiation of a settlement by the trustee is clarified by conclusion of law number 4 which states:
The Bankruptcy Court has discretion to and should approve the compromise recommended by the Trustee in Bankruptcy after a hearing held upon appropriate notice, where it appears, as it does in this case, that expense, benefits, hazards and complexity of litigation, potential delay and waste of time, effort and expense might otherwise result.
The conclusion of law which appellants challenge did not shift the burden for production of proof regarding the fairness of the settlement agreement. Any error in the conclusion was not material when read in conjunction with the other findings and conclusions which the bankruptcy court made.
2. Sufficiency of Findings of Fact.
The second claim of error asserted by appellants is that the bankruptcy court failed to make findings of fact which (1) reflect a reasoned analysis of the settlement, and (2) permit an appellate court to make a proper review. However, the record, when reviewed as a whole, supports a determination otherwise.
Appellants argue that the holdings in Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) (“TMT Trailer"), and Matter of Jackson Brewing Co., supra, require the bankruptcy court to “analyze and describe the merits and essential elements of both: 1) the Agreement as a whole; and, 2) the various claims which it purported to resolve.” Appellants allege that the findings of fact and conclusions of law are “boiler plate,” and as such are defective since the bankruptcy court failed to include a cost-benefit analysis of the relative merits of pursuing or settling the various claims which the trustee surrendered, or any evaluation of the consideration which he purportedly received. We disagree.
In TMT Trailer, the court determined that
[tjhere can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.
390 U.S. at 424-25, 88 S.Ct. at 1163-64. However, the Court gives us no specific direction on how much specificity or detail the bankruptcy court is required to put into its findings of fact or conclusions of law in order to comply with the Supreme Court’s language.
*1383 In our case, the bankruptcy court’s findings of fact and conclusions of law are rather general. However, the bankruptcy court attached to these findings and conclusions a copy of the settlement agreement upon which it relied, and which it approved. The settlement agreement, which is twenty-five pages in length, sets forth in detail the claims which it purports to settle, the parties involved, the valuation of the corporate assets, the identity of shareholders and the number of outstanding shares, the cost-benefit analysis of the relative merits of pursuing or settling the various claims, and the conditions which would enable the trustee to proceed with the liquidation. Appellate review is made more difficult by the lower court’s failure to write an opinion explaining why it deemed the compromise to be fair, reasonable and adequate. See In re Flight Transportation Corp., 730 F.2d at 1136. However, where the record supports approval of the compromise, the bankruptcy court should be affirmed. See, e.g., Id.
It is clear from the record before us, which is well over four thousand pages with reporter’s transcripts amounting to nearly one thousand pages, that the bankruptcy judge was informed and had apprised himself of all facts necessary to make an intelligent and independent judgment that the compromise was fair and equitable. The litigation was filed in the bankruptcy court in 1976, and the judge who approved the compromise had handled the matter since 1980. Thus, in addition to the settlement agreement, the bankruptcy judge had heard testimony on the value of the corporation’s assets, the terms of the ESOT (which appellants challenge), and was well aware of the claims being asserted by appellants in their Adversary Proceeding D, which was before the court. There is clear support in the record for our affirming the findings of fact with respect to the approval of the compromise.
3. Fairness of the Settlement Agreement.
Appellants claim that the bankruptcy court abused its discretion in approving the settlement agreement and compromise “in the absence of a record which provides an adequate analysis of its merits.” A court may approve a compromise or settlement only when it is “fair and equitable.” Matter of Aweco, Inc., 725 F.2d 293, 298 (5th Cir.), cert. denied, — U.S. —, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984). An approval of a compromise, absent a sufficient factual foundation which establishes that it is fair and equitable, inherently constitutes an abuse of discretion. Id., 105 S.Ct. at 299. However, the record in the case before this court is replete with factors which support the bankruptcy court’s approval of the compromise.
This is not the case where the bankruptcy judge reached for his stamp and marked “approved” without some party supplying concrete facts. See Matter of Aweco, 725 F.2d at 300. Appellants argue that neither the court nor the trustee was sufficiently familiar with the ESOT or the Adversary Proceeding D. However, considerable evidence was presented on the ESOT, including its terms and provisions and its valuation.
The application to compromise the controversy and the settlement agreement, along with the testimony of hearings on the application, indicate that the court made a full and fair independent assessment of the wisdom of the compromise. Cf. Matter of Boston & Providence Railroad Corp., 673 F.2d 11, 12 (1st Cir.1982). The' trustee’s application and the settlement agreement set forth in detail the claims pending against the bankrupt estate, and an evaluation of those claims. Furthermore, the findings and order of the bankruptcy court indicate that it made an independent evaluation from the trustee’s application and settlement agreement, and from the rest of the proceedings before it. Cf id. at 12-13. The bankruptcy court did not abuse its discretion in approving the compromise.
4. Consideration of Creditors’ Objections.
Appellants contend that the bankruptcy court’s failure to respond to each objection *1384 which they raised in their “objection to application to compromise controversy," constituted an abuse of discretion. However, appellants cite no cases directly supporting this proposition.[6]
Creditors’ objections to a compromise must be afforded deference. In re Transcontinental, 764 F.2d at 1299; accord, In re Hallet, 33 B.R. at 566; In re The General Store of Beverly Hills, 11 B.R. at 541. In addition, the bankruptcy court is obligated to preserve the rights of the creditors. Matter of W.T. Grant Co., 4 B.R. at 69. However, where, as here, the evidence on the issue of the compromise was thorough and comprehensive, the court was familiar with the entire record and touched all material bases of the creditors’ objections, and held directly, expressly or by necessary implication, on every substantial point of contention, the court’s approval of the compromise does not constitute an abuse of discretion. Matter of Jackson Brewing Co., 624 F.2d at 612.
5. Exclusion of Evidence and Testimony.
Lastly, appellants argue that the bankruptcy court improperly limited their inquiry and refused to hear testimony on matters which they claim were necessary to the court’s arriving at a fair and equitable compromise. Appellants assert that (1) their inquiry regarding the negotiating process with respect to the settlement agreement was relevant to the court’s determination of fairness and that the court improperly limited their inquiry, and (2) the bankruptcy court improperly refused to hear testimony on the ESOT, which was necessary to the settlement of claims. These arguments have, at best, little merit.
The bankruptcy judge may give weight to the opinions of the trustee, the parties, and their attorneys. In re Blair, 538 F.2d at 851. Furthermore, the court may ex-elude evidence which is relevant where such evidence creates undue delay, waste of time or needless presentation of cumulative evidence. Fed.R.Evid. 403. In this case, although the bankruptcy court may have limited appellants’ questioning of witnesses with respect to the negotiating process involved in the settlement agreement, the court did not prohibit such questioning altogether. Furthermore, with respect to the ESOT, considerable evidence was presented and appears in the record. The court permitted testimony on the ESOT and its effect on the settlement agreement. The court did not abuse its discretion in limiting testimony on these matters.
III. CONCLUSION
Appellants have “failed to articulate a coherent explanation of the threat posed to [their] claim by the compromise.” In re Transcontinental Energy Corp., 764 F.2d at 1299. Furthermore, when we consider the lengthy delay occasioned by this appeal and the additional attorneys’ fees and appellate costs, this appeal, as a whole, may be an example of asset wasting. In re Blair, 538 F.2d at 851.
A finding that the compromise is fair and equitable is supported by the record. “As long as the approved plan is fair and equitable, we cannot reject it in favor of a plan that is more equitable.” Citibank, N.A. v. Baer, 651 F.2d at 1346.
The judgments below are severally AFFIRMED.

. Marlin was later relieved of his duties as general partner and joint venture manager. Criminal proceedings were brought against him in several jurisdictions as a result of his participation in various allegedly fraudulent real estate and financial schemes. These proceedings have resulted in Marlin’s conviction and sentence to ten years in prison. However, Marlin is not a party to these appeals. Although several California state court actions were commenced by him and against him, they are not the subject of review herein.

. This voting trust, established in May, 1976, was entered into by A & C and K & K, and provided that the A & C Entities would transfer their collective shares in K & K (approximately eighty percent of the outstanding shares) to a voting trustee to be selected by the advisory committee of K & K. This committee consisted of the K & K Board of Directors and twenty-two delegates from the A & C Entities.

. The effective date of these Code sections was April 1, 1984. The appeals to the district court were filed prior to the effective date of these statutes, on April 28, 1983, August 23, 1983, October 27, 1983 and November 8, 1983. However, Congress provided that during the interim period prior to the effective date of 28 U.S.C. §§ 1293 and 1334, the appellate jurisdiction of the courts would be the same as that provided for in these statutes. Pub.L. 85-598, Title IV, § 405(c)(2), 92 Stat. 2685 (1978).

. Although the order approving the compromise was entered after the repeal of the authorizing statute, since the original bankruptcy petition was filed prior to its repeal, the Bankruptcy Act of 1898 governs. See In re Transcontinental, 764 F.2d at 1298 n. 2. Even assuming that Section 27 does not apply to this order, 11 U.S.C. § 105(a) (1984) allows the court to issue any order, process or judgment necessary or appropriate to carry out the provisions of Title 11.

. Where the district court summarily affirms the bankruptcy court’s orders without setting forth separate Finding of Fact and Conclusions of Law, the district court is deemed to have adopted those of the bankruptcy court. Chase Capital Corp. v. Bumb, 336 F.2d 1000, 1001 (9th Cir.1964), cert. denied, 380 U.S. 934, 85 S.Ct. 941, 13 L.Ed.2d 821 (1965).

. Appellants cite Mandujano v. Basic Vegetable Products, Inc., 541 F.2d 832, 836 (9th Cir.1976), to support their argument that the bankruptcy court abused its discretion in failing to respond to each of their objections. However, that case involved a settlement in a class action suit filed under Title VII of the Civil Rights Act of 1964. The language in Mandujano is apparently limited to Title VII actions.