**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                )    BAP No.   EC-14-1371-FDJu
                                       )
J. PEDRO ZARATE,                       )    Bk. No.   13-22346
                                       )
                 Debtor.               )
_____        )
                                       )
J. PEDRO ZARATE,                       )
                                       )
                 Appellant,            )
                                       )
v.                                     )    **MEMORANDUM**[*]
                                       )
UMPQUA BANK; GEOFFREY                   )
RICHARDS, Chapter 7 Trustee,           )
                                       )
                 Appellees.            )
_____        )

Argued and Submitted on November 19, 2015
at Sacramento, California

Filed – December 9, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher M. Klein, Bankruptcy Judge, Presiding

Appearances:    Appellant J. Pedro Zarate argued pro se; Dana A.
                Suntag of Herum Crabtree Suntag argued for
                Appellee Geoffrey Richards, Chapter 7 Trustee;
                David Marvin Wiseblood argued for Appellee Umpqua
                Bank.

Before: FARIS, DUNN, and JURY, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

When Appellant J. Pedro Zarate filed his bankruptcy petition, he had a pending state-court lawsuit against Appellee Umpqua Bank ("Bank"). The chapter 7 trustee, Appellee Geoffrey Richards ("Trustee"), entered into a settlement of the lawsuit with the Bank. The bankruptcy court approved the agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure.[1] Mr. Zarate appeals. We hold that the bankruptcy court did not abuse its discretion in approving the compromise as fair, equitable, and reasonable. Accordingly, we AFFIRM.

**FACTUAL BACKGROUND**

**A.    State-court litigation**

On or around November 7, 2001, Mr. Zarate took out a commercial loan for $85,750 from Sonoma National Bank, which is a predecessor to the Bank.[2] The loan was secured by commercial real property on East Lindsay Street in Stockton, California ("Subject Property"). Mr. Zarate executed a promissory note and deed of trust in favor Sonoma National Bank. The loan provided for an adjustable interest rate and a ten-year term with a balloon payment at the loan's maturity.

Mr. Zarate defaulted on the loan when it matured in December

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Sonoma National Bank merged with Sterling Savings Bank. The Bank alleges that it is the successor-in-interest to Sterling Savings Bank. Unless otherwise indicated, the three entities will collectively be referred to as the "Bank."

2011. On or around June 28, 2012, the Bank filed a complaint for specific performance against Mr. Zarate in San Joaquin County Superior Court. On or around July 31, 2012, the state court granted the Bank's motion to appoint a receiver. The order restrained Mr. Zarate from interfering with the Subject Property or the receiver.

Mr. Zarate filed a second amended answer and a second amended cross-complaint containing ten causes of action, including fraudulent inducement, breach of fiduciary duty, declaratory relief as to property interest, slander of title, improper foreclosure, and quiet title. Essentially, Mr. Zarate alleged that the loan was supposed to have a thirty-year term, a fixed interest rate, and fully amortizing payments, rather than a ten-year term with variable interest and a final balloon payment. He also argued that the lender represented that he and his wife were both signing the promissory note, whereas, in fact, he was the only signatory. Finally, Mr. Zarate argued that the Bank improperly acted as its own broker and owed a fiduciary duty to Mr. Zarate.

Based on these allegations, Mr. Zarate claimed that the Bank committed fraud when it represented to Mr. Zarate and his wife that the loan was set at a fixed rate for thirty years. He contended that the Bank knew or should have known that Mr. Zarate could not comply with the terms of the ten-year loan and did not understand that the loan had an adjustable interest rate and balloon payment due when the loan matured. He similarly asserted that the Bank fraudulently told Mr. Zarate and his wife that both would be signatories to the promissory note, when, in actuality,

3

Mr. Zarate's wife signed the deed of trust, not the promissory note. As a result of these allegedly wrongful acts, Mr. Zarate argued that the Bank breached its fiduciary duties to him.

Mr. Zarate sought declaratory and injunctive relief against the Bank. He also requested $4,538.64 in statutory damages, $75,000 in compensatory damages, and $425,000 in general damages.

**B. Bankruptcy proceedings**

On February 22, 2013, before the Bank answered Mr. Zarate's second amended cross-complaint, Mr. Zarate filed his chapter 13 petition. On motion by the Bank, the bankruptcy court ordered the case converted to a chapter 7 case. The court then appointed the Trustee to oversee administration of the estate.

The Trustee and his counsel "investigated the facts and circumstances relating to the Lawsuit to determine the potential value of the Lawsuit. The investigation included review of documents served and filed in the Lawsuit and conversations about the Lawsuit with Appellant and his counsel in the Lawsuit and the Bank's counsel in the Lawsuit." The Trustee determined that Mr. Zarate had indisputably defaulted under the loan. He also learned that the Bank had conducted a nonjudicial foreclosure sale of the Subject Property in October 2012, and Mr. Zarate had not sought to enjoin the foreclosure sale.

The Trustee attempted to learn the factual and legal bases for Mr. Zarate's claims against the Bank. The Trustee reviewed the Bank's discovery responses and documents that it had produced in the state-court lawsuit. He stated that Mr. Zarate and his attorney were not "able to provide significant factual or evidentiary information to support Appellant's claims. In

4

addition, they were unable to present persuasive legal argument to support Appellant's claims." The Trustee also inquired if Mr. Zarate's attorney in the state-court lawsuit was willing to continue prosecuting the lawsuit on behalf of the bankruptcy estate; the lawyer declined.

The Trustee decided to attempt to settle the state-court lawsuit with the Bank. The Bank agreed to pay $20,000 to the Trustee in exchange for a dismissal of the second amended cross-complaint with prejudice.

On February 25, 2014, the Trustee filed Chapter 7 Trustee Geoffrey Richards' Motion to Compromise Controversy ("Motion to Compromise"). He argued that, under the applicable Ninth Circuit test, the compromise was reasonable, fair, and equitable, particularly because the state-court lawsuit lacked merit and its success was doubtful. Only Mr. Zarate opposed the motion. The bankruptcy court heard arguments on the Motion to Compromise on March 25, 2014, and took the motion under submission.

On March 31, 2014, before ruling on the Motion to Compromise, the bankruptcy court assigned the case to the Bankruptcy Dispute Resolution Program. The parties participated in the court-ordered mediation, but were unable to settle the dispute.

On June 18, 2014, the bankruptcy court issued an order for an initial Judicial Mediation Conference, in order to determine whether it should order judicial participation in further mediation. At the conference, presided over by Chief Judge Ronald Sargis, the court questioned the parties regarding the

5

strength of the lawsuit and the potential for settlement.[3]  When the court questioned Anh Nguyen, Mr. Zarate's state-court counsel, about information he had provided to the Trustee regarding the state-court lawsuit, Mr. Nguyen stated:

> I gave him as much information as I could.  It's THE [sic] beginning stages of the case.  I honestly told him we had very little right now.  It's going to be an uphill battle for us.  We didn't know how much this case is worth and whether or not it would be a good option to pursue it considering the resources that we have to put into the case.

The court continued the hearing on the Motion to Compromise until July 1, 2014.

At the July 1, 2014 hearing, Judge Klein gave Mr. Zarate an opportunity to present the Trustee with further information regarding the lawsuit.  On July 3, Mr. Zarate submitted over 400 pages of documents in support of his lawsuit.  The Trustee claimed that the documents were "jumbled" and Mr. Zarate failed to properly explain the documents.  The court reset the hearing for July 8.

At the continued hearing, counsel for the Trustee informed the court:

> [Mr. Zarate] provided a series of e-mails containing a series of documents, most of which we had already seen, some of which we had not seen.  The documents he provided that we had not seen did not in any way change our view of the case.  He also provided some explanations of essentially his theory of the case that essentially restated what we had heard before and do nothing more than confirm to us that these claims are extremely weak.

---

[3] Judge Klein, who oversaw the case and ultimately approved the compromise, was not present at the judicial mediation conference.  It is unclear whether Judge Klein was aware of the arguments and representations made before Chief Judge Sargis.

6

There are significant defenses to the case, and the settlement of $20,000, which is a significant portion of the loan amount of $85,000, is a very good settlement, and we are satisfied that it is the proper settlement based on the additional materials Mr. Zarate provided, and we would again ask that the Court grant the Motion[.]

With that information, the court took the matter under submission.

On July 9, 2014, the bankruptcy court entered its order granting the Motion to Compromise. It noted that Mr. Zarate had been "advised on multiple occasions . . . that he needs to come forth with facts and evidence to support facts that demonstrate that there is more merit to his contentions than heretofore has appeared." Turning to the issue of "whether the compromise is fair and equitable taking into account the probability of success in litigation, difficulties, if any, to be encountered in the matter of collection, complexity of litigation, the expense, inconvenience, and delay necessarily attending it, and the interests of the creditors[,]" the court concluded that, under the totality of the circumstances, the compromise was fair and equitable. The court held that

the probability of success appears to be low. Mr. Zarate has repeatedly been asked for evidence to back up his contentions regarding this $85,750 commercial loan. The evidence has not been forthcoming. What has been forthcoming are technical assertions that Mr. Zarate was not represented by a broker and that his spouse was not party to the loan. The bank has presented information that goes beyond those assertions and other assertions made by Mr. Zarate. Thus, there are questions of fact that would need to be resolved.

Given that "litigation would be complex and the outcome uncertain[,]" the court held that the $20,000 offer of settlement "appears likely to exceed the net amount that could be achieved

7

in litigation . . . ." The court also stated that "[e]xpense, inconvenience, and delay are manifest. Litigation would be costly, fact-specific, and consume a considerable amount of time." The court noted that collectibility was not a factor, as the Bank is sufficiently solvent, and none of the creditors opposed the compromise.

Mr. Zarate timely filed his notice of appeal on July 22, 2014.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in approving the compromise of Mr. Zarate's state-court lawsuit.

## STANDARD OF REVIEW

The bankruptcy court's decision to approve a compromise is reviewed for abuse of discretion. Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1380 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986); CAM/RPC Elecs. v. Robertson (In re MGS Mktg.), 111 B.R. 264, 266-67 (9th Cir. BAP 1990). We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion, first determining de novo whether the court identified the correct legal rule, and second examining the court's factual findings under the clearly erroneous standard. Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango Office, LLC), 481 B.R. 51, 64 (9th Cir. BAP 2012) (citing United States v. Hinkson, 585 F.3d 1247,

8

1261-62 (9th Cir. 2009) (en banc)). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

**A.  Rule 9019(a) allows the court to approve settlement or compromise of claims belonging to the bankruptcy estate if it is fair, reasonable, and adequate.**

Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Rule 9019(a).

"The bankruptcy court has great latitude in approving compromise agreements." Woodson v. Fireman Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988) (citing In re A&C Props., 784 F.2d 1380-81).

> It is clear that there must be more than a mere good faith negotiation of a settlement by the trustee in order for the bankruptcy court to affirm a compromise agreement. The court must also find that the compromise is fair and equitable. See, e.g., Citibank, N.A. v. Baer, 651 F.2d 1341, 1345-46 (10th Cir. 1980).

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:

>> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the

9

premises.

In re A&C Props., 784 F.2d at 1381 (citation omitted). The Ninth Circuit has also stated that "[t]he trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." Id. (citing In re Hallet, 33 B.R. 564, 565-66 (Bankr. D. Me. 1983)).

The law favors compromise, "and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed.[4] Thus, on review, we must determine whether the settlement entered into by the trustee was reasonable, given the particular circumstances of the case." Id. (internal citations omitted).

Moreover, "'[w]hen assessing a compromise, courts need not rule upon disputed facts and questions of law, but only canvass the issues.' If the court were required to do more than canvass the issue, 'there would be no point in compromising; the parties might as well go ahead and try the case.'" Suter v. Goedert, 396 B.R. 535, 548 (D. Nev. 2008) (citations omitted).

**B. The bankruptcy court did not abuse its discretion in determining that the probability of success on Mr. Zarate's state-court lawsuit was low, such that it was fair and reasonable to approve the settlement.**

It is undisputed that the bankruptcy court employed the

---

[4] In his reply brief, Mr. Zarate takes issue with the Trustee's and the Bank's citation to this sentence in A&C Properties. However, he does not explain how the citation is misleading or wrong or otherwise argue that the bankruptcy court erroneously applied this principle.

10

correct legal standard.  Mr. Zarate only asserts that the court erred in its findings regarding the first of the four factors discussed in A&C Properties, i.e., that the probability of success in the state-court lawsuit was low.[5]  We hold that the bankruptcy court did not err in finding that the compromise was fair and equitable and granting the Motion to Compromise.

First, Mr. Zarate argues that the court improperly forced him "to prove up his case to show probability of success without requiring Sterling Bank to deny the allegations by way of a verified answer" to the second amended cross-complaint.  In other words, Mr. Zarate contends that, because the Bank had not answered the second amended cross-complaint, "there was no evidence contradicting the sworn to facts as alleged in the Second Amended Cross Complaint," and such facts must be deemed conclusive.  Mr. Zarate concludes that his responsibility "to bring forth additional evidence to show probability of success was premature, unreasonable, unfair and inequitable . . . ."

Mr. Zarate does not argue that the bankruptcy court failed to consider the evidence he presented or applied an incorrect legal standard.[6]  Rather, he takes issue with the bankruptcy court's order requiring him to present evidence in support of his state-court claims.

It is true that "[t]he trustee . . . has the burden of

---

[5] The Trustee argues that the bankruptcy court properly evaluated all four factors and found that the settlement was reasonable.  Because this appeal only concerns the first factor, we do not address the remaining three factors.

[6] Mr. Zarate agrees that the correct four-part test is articulated by the Ninth Circuit in A&C Properties.

11

persuading the bankruptcy court that the compromise is fair and equitable and should be approved." In re A&C Props., 784 F.2d at 1381 (citing In re Hallet, 33 B.R. at 565-66). However, the bankruptcy court did not improperly shift the burdens of production and persuasion to Mr. Zarate. Rather, the bankruptcy court considered the facts and evidence in both the Trustee's Motion to Compromise and Mr. Zarate's opposition, found Mr. Zarate's evidence insufficient, and was prepared to side with the Trustee. The court stated that "[t]he bank has presented information that goes beyond those assertions and other assertions made by Mr. Zarate." By requiring that Mr. Zarate "come forth with evidence to support facts that demonstrate that there is more merit to his contentions," the bankruptcy court did not force Mr. Zarate to prove his claims in the first instance, but rather gave Mr. Zarate multiple chances to convince the Trustee and the court that his chances of success on the lawsuit were higher than the Trustee thought.[7] The bankruptcy court did not err when it credited the Trustee's evaluation of Mr. Zarate's claims.

Second, the court did not err in determining that the probability of success in the state-court lawsuit was low. The Trustee attested that he had investigated the facts and circumstances surrounding the state-court lawsuit. The Trustee determined that: (1) the promissory note was clear and

---

[7] The court gave Mr. Zarate ample opportunity to present sufficient evidence to show that his claims had merit. The court even sua sponte ordered the parties to mediation after it took the Motion to Compromise under submission, because it was concerned "whether the debtor had been treated fairly."

12

unambiguous and the parol evidence rule would prevent Mr. Zarate from arguing that the terms of the loan differ from what is shown on the promissory note; (2) under California law, a lender does not owe a fiduciary duty to commercial loan customers; (3) the state court had already found that the Bank had standing to pursue the litigation; and (4) the terms of the deed of trust created a rebuttable presumption that the foreclosure sale was proper.

The Trustee also concluded that some of Mr. Zarate's claims were facially insufficient. For example, Mr. Zarate's claim regarding his wife as signatory to the promissory note likely lacked merit. The Bank denied that Mr. Zarate's wife was supposed to be a co-signer, and Mr. Zarate "has failed to show how, even if his wife was supposed to be a cosigner on the loan, how that could create a claim against the Bank."

The Trustee considered that even Mr. Zarate's own state-court counsel declined to prosecute the lawsuit on behalf of the estate. The Trustee's counsel attested that he had inquired whether Mr. Nguyen would pursue the claim, but Mr. Nguyen refused to do so. Mr. Nguyen admitted in open court (before Chief Judge Sargis) that "I honestly told [the Trustee] we had very little [information] right now. It's going to be an uphill battle for us. We didn't know how much this case is worth and whether or not it would be a good option to pursue it considering the resources that we have to put into the case." The Trustee further determined that the estate did not have the resources to retain other counsel.

As such, the Trustee concluded that the probability of

13

success in the lawsuit was uncertain at best. The bankruptcy court agreed.

Mr. Zarate has not pointed to any specific error in the Trustee's analysis of the probability of success or the court's consideration thereof. Accordingly, the court did not abuse its discretion when it determined that the compromise was fair and reasonable, because the likelihood of success in the state-court lawsuit was low.

Finally, Mr. Zarate appears to argue that he has established that he will likely prevail on his state-court claims, because the facts in his second amended cross-complaint should be treated as conclusive (or, at least, not refuted). He contends that "[t]he facts alleged were evidence in nature, and because Sterling Bank had not answered Appellant's Second Amended Cross-Complaint, there was no evidence contradicting the sworn to facts as alleged in the Second Amended Cross-Complaint." He states that "the Trustee could have entered default against Sterling Bank."

This argument is meritless. As the Trustee points out, "the Trustee and the Bank were in communication once the Trustee was appointed and it would have been inappropriate to file a request for entry of default without a warning to the Bank." We cannot fault the Trustee for choosing to engage in settlement discussions with the Bank, rather than continuing to litigate a case that he found questionable at best. Moreover, given the evidence and argument provided by the Trustee in his Motion to Compromise, we cannot say that the bare facts alleged in the second amended cross-complaint are sufficient to establish a

14

likelihood of success.

Accordingly, the bankruptcy court did not err in holding that the likelihood of success in the state-court lawsuit was low, such that the compromise was fair and equitable.

**C.   The court did not err in allowing the Bank to be heard as an interested party.**

Mr. Zarate argues that the bankruptcy court erred in not requiring the Bank to prove that it held an interest in the promissory note and deed of trust.  He claims that the Bank is not properly a party in interest.  He states that "Sterling Bank has not shown, whether by way of proof of claim or otherwise that it is a successor in interest to the Note and DOT."

Mr. Zarate has not shown that he raised this issue before the bankruptcy court.  Moreover, the state court had already considered and rejected this argument in connection with the foreclosure proceedings.

Further, the question of the Bank's standing has no bearing on the Trustee's evaluation of the settlement.  Mr. Zarate complains that the "Bank has not shown that it is a party in interest in these proceedings."  If Mr. Zarate means that the Bank must establish its standing before the Trustee can settle the state-court claims in bankruptcy court, he is incorrect.  The Trustee is free (subject to bankruptcy court approval) to settle claims with anyone.  Here, Umpqua Bank was willing to settle the state-court claims for $20,000, and the Trustee utilized his business judgment to determine that the settlement was in the best interest of the estate.  The court did not err when it agreed with the Trustee's evaluation that the settlement was

15

fair, reasonable, and in the best interest of the estate.

**D.  The state court's order to maintain the status quo applied solely to Mr. Zarate.**

Mr. Zarate also argues that the bankruptcy court abused its discretion when it approved the compromise after it had received notice that the state court had ordered that the status quo was to remain in effect.

This argument is disingenuous.  The state court's order was directed at Mr. Zarate, not the Bank, the bankruptcy court, or the Trustee.  In its written order, the state court unequivocally stated that "Defendant Pedro Zarate is enjoined and restrained from committing or permitting waste of the Property; removing, transferring, encumbering or otherwise disposing of the Property or its fixtures; demanding, collecting, diverting or receiving rents; or interfering in any way with the discharge of the receiver's duties."  By its terms, the state court's order did not prevent the Trustee from compromising the lawsuit.

**E.  Mr. Zarate had ample opportunity to conduct discovery.**

Finally, Mr. Zarate argues throughout his briefs that the court prematurely approved the compromise, because "no discovery proceedings had been conducted."  He complains that the Bank failed to respond to his discovery requests, implying that he could not present the court with adequate evidence with which to evaluate the A&C Properties factors.

However, Mr. Zarate misstates the facts when he alleges that the Bank did not "submit[ ] itself to discovery proceedings."  The Trustee points out that Mr. Zarate propounded numerous form interrogatories, special interrogatories, requests for admissions

16

and document requests, all of which were answered by the Bank. Mr. Zarate does not deny the appellees' arguments, but responds in his reply brief that, although he "attempted" to conduct discovery, "because Sterling Bank did not verify its responses to Mr. Zarate's discovery requests, they are incomplete and act as no responses at all. . . . As a result, **no** discovery had been conducted." (Emphasis in original.)

Mr. Zarate's argument is unavailing and misleading. It is undisputed that Mr. Zarate propounded extensive discovery on the Bank totaling 213 individual requests.[8] He also does not dispute that he received the Bank's responses to all of the requests. He now argues that the Bank did not "verify" its responses, but each of the responses to the discovery requests was signed by the Bank's counsel and included a sheet stating, "VERIFICATION TO FOLLOW." While the record does not reflect whether the Bank subsequently provided a verification, it does not matter here. Mr. Zarate does not explain how the lack of a verification renders the discovery responses so deficient that he could not present his case to the bankruptcy court. Accordingly, Mr. Zarate's dubious complaints regarding the discovery process do not convince us that the bankruptcy court abused its discretion.

Mr. Zarate also argues that, because he made two "mistakes" in propounding his discovery requests (a mistake in describing the deed of trust and the property), and because the Bank

---

[8] Mr. Zarate propounded 23 requests for answers to interrogatories, 22 requests for admissions, and 168 requests for production of documents.

17

objected to his discovery requests, "almost no request was forthcoming with the requested information, documents, or admissions." Even assuming the Bank's responses were deficient, this matter should have properly been raised by a discovery motion before the bankruptcy court, rather than before the Panel on appeal.

Furthermore, even if Mr. Zarate had not conducted any discovery, the Trustee could still compromise the state-court lawsuit. A trustee can exercise his business judgment to settle claims at any time, based on his evaluation of the case. Rule 9019 does not constrain the timing of a compromise. Mr. Zarate, on the other hand, appears to advocate for a bright-line rule, whereby a trustee cannot settle a state-court lawsuit until the debtor has had a chance to conduct full discovery to prove his case. This view is nonsensical, as it would interfere with the Trustee's ability to administer the estate in the most fair and efficient manner. Rather, the Trustee must be permitted to use his business acumen and judgment in the best interest of the estate. As such, we decline to impose any hard and fast rule regarding the timing of the Trustee's right to compromise claims in the bankruptcy case.

## CONCLUSION

For the reasons set forth above, we conclude that the bankruptcy court did not abuse its discretion in approving the compromise of the state-court lawsuit. Accordingly, we AFFIRM.

18